IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| SFA SYSTEMS, LLC, | § | |
| | § | |
| Plaintiff, | § | Civil Action No. 6:09-cv-340-LED |
| | § | |
| v. | § | JURY TRIAL DEMAND |
| | § | |
| 1-800-FLOWERS.COM, INC., et al. | § | |
| | § | |
| Defendants. | § | |

| | | |
|---|---|---|
| SFA SYSTEMS, LLC, | § | |
| | § | Civil Action No. 6:10-cv-00300-LED |
| Plaintiff, | § | |
| v. | § | JURY DEMANDED |
| | § | |
| BIGMACHINES, INC., et al. | § | |
| | § | |
| Defendants. | § | |

**PLAINTIFF SFA SYSTEMS, LLC'S P.R. 4-5(a) CLAIM
CONSTRUCTION BRIEF**

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ..................................................................................................1

II.    THE `525 PATENT ..............................................................................................2

III.   GENERAL PRINCIPLES GOVERNING CLAIM CONSTRUCTION .................3

IV.    LEVEL OF ORDINARY SKILL IN THE ART .....................................................3

V.     ARGUMENT REGARDING CONSTRUCTION OF THE
       MATERIAL CLAIM TERMS IN DISPUTE ..........................................................4

       A.     AGREED CLAIM CONSTRUCTIONS ......................................................4

       B.     DISPUTED CLAIM TERMS .....................................................................4

              1.    A computer implemented sales system used to facilitate a sales
                    process, the system comprising . . . ...................................................4

                    a.    "a computer implemented sales system"..........................................6

                    b.    "a sales process" ...............................................................8

              2.    "A method of facilitating a sales process using a computer
                    arrangement"......................................................................12

                    a.    "a computer arrangement".........................................................13

                    b.    "a sales process".................................................................13

              3.    "event occurring within the system"/"event occurring in
                    the system"........................................................................14

              4.    "event occurring in the sales process" ...............................................16

              5.    "context" .........................................................................18

              6.    "inferring…a context in which the event occurred" ...........................21

              7.    "automatically initiating"/"automatically initiate"...............................22

              8.    35 U.S.C. §112 ¶ 6 Issues ........................................................23

                    a.    "subsystem" ......................................................................25

       b.  "event manager" ................................................................................26

       c.  "coupled to" ...................................................................................27

VI.    CONCLUSION ..........................................................................................28

# TABLE OF AUTHORITIES

## CASES

*Abb Automation Inc. v. Schlumberger Res. Mgmt. Servs., Inc.*
    254 F.Supp. 2d 475 (D.Del. 2003)...........................................................................5

*Bicon, Inc. v. Straumann Co.*
    441 F.3d 945, 952 (Fed. Cir. 2006)...........................................................................5

*Boehringer Ingelheim Vetmedica, Inc. v. Schering-Plough Corp.*
    320 F.3d 1339, 1345 (Fed. Cir. 2003).......................................................................5

*CCS Fitness, Inc. v. Brunswick Corp.*
    *288 F.3d 1359, 1369 (Fed. Cir. 2002)*....................................................................24

*Clear With Computers, LLC v. Bergdorf Goodman, Inc., et al.*
    2011 U.S. Dist. LEXIS 861 (E.D. Tex. Jan. 5, 2011)............................................22

*Comark Communs, Inc. v. Harris Corp.*
    156 F.3d 1182, 1187 (Fed. Cir. 1998)....................................................................7, 9

*Computer Docking Station Corp. v. Dell, Inc.*
    519 F.3d 1366, 1374 (Fed. Cir. 2008).....................................................................11

*Constant v. Advanced Micro-Devices, Inc.*
    848 F.2d 1560, 1571 (Fed. Cir. 1988)..................................................................7, 20

*Curtiss-Wright Flow Control Corp. v. Velan, Inc.*
    438 F.3d 1374 (Fed. Cir. 2006)...............................................................................10

*Daiichi Sankyo Co. Ltd. v. Apotex, Inc.*
    501 F.3d 1254, 1256 (Fed. Cir. 2007).......................................................................3

*Eon Corp. IP Holdings, LLC v. Sensus USA Inc.*
    2010 U.S. Dist. LEXIS 83442 (E.D. Tex. Aug. 11, 2010) .....................................6

*Greenberg v. Ethicon Endo-Surgery, Inc.*
    91 F.3d 1580, 1583 (Fed. Cir. 1996).......................................................................24

*Jack Guttman, Inc. v. KopyKake Enter., Inc.*
    302 F.3d 1352, 1357 (Fed. Cir. 2002).....................................................................10

*Liebel-Flarsheim Co. v. Medrad, Inc.*
    358 F.3d 898, 910 (Fed. Cir. 2004)...........................................................................9

*Lighting World, Inc. v. Birchwood Lighting, Inc.*
    382 F.3d 1354, 1358 (Fed. Cir. 2004)................................................................23, 24

*Mesh Comm, LLC v Pepco Energy Servs.*
    2010 U.S. Dist. LEXIS 137029 (D. Md. Dec. 29, 2010).......................................26

*Micron Tech., Inc. v. Tessera, Inc.*
    440 F.Supp. 2d 591, (E.D. Tex 2006)...................................................................5, 6

*MIT v. Abacus Software*
    462 F.3d 1344, 1353 (Fed. Cir. 2006)....................................................24

*Negotiated Data Solutions, LLC v. Dell, Inc.*
    596 F.Supp. 2d at 949 (E.D. Tex. Jan. 16, 2009)..................................27

*Omax Corp. v. Flow Int'l Corp.*
    2006 U.S. Dist. LEXIS 81914 (WD. Wash., Nov. 7, 2006) ..................23

*Omega Eng'g Inc. v. Raytek Corp.*
    334 F.3d 1314, 1323 (Fed. Cir. 2003)....................................................11

*Orion IP, LLC v. Staples, Inc.*
    406 F. Supp. 2d 717, 738 (E.D. Tex. 2005)............................................6

*Personalized Media Communs v. ITC*
    161 F.3d 696, 704 (Fed. Cir. 1998).......................................................24

*Phillips v. AWH Corp.*
    415 F.3d 1303, 1316-17 (Fed. Cir. 2005) ..............................3, 7, 9, 19,20

*Primos, Inc. v. Hunter's Specialties*
    451 F.3d 841, 849 (Fed. Cir. 2006).......................................................16

*Rowe v. Dror*
    112 F.3d 473, 478 (Fed. Cir. 1997)) .......................................................5

*SFA Sys., LLC v. INFOR Global Solutions (Michigan), Inc.*
    2009 U.S. Dist. LEXIS 13705 (E.D. Tex. Feb. 23, 2009) ....................1, 18, 19, 21

*VirnetX, Inc. v Microsoft Corp.*
    2009 U.S. Dist. LEXIS 65667 (E.D. Tex. July 30, 2009)......................22

*Visto Corp. v. Microsoft Corp.*
    2007 U.S. Dist. LEXIS 68226 (E.D. Tex. Aug. 28, 2007) ....................22

*Wenger Mfg., Inc. v. Coating Mach. Sys., Inc.*
    239 F.3d 1225, 1233 (Fed.Cir.2001)......................................................9

## OTHER

35 U.S.C. § 112, ¶ 6.........................................................................1, 23, 26

Plaintiff SFA Systems, LLC ("SFA") submits the following claim construction brief pursuant to P.R. 4-5(a).

## I.      INTRODUCTION

SFA is the owner of U.S. Patent No. 6,067,525 ("the '525 Patent") entitled "Integrated Computerized Sales Force Automation System."[1] The above captioned actions involve the enforcement of the `525 patent.  SFA contends that each of the Defendants infringe claims 1-4, 20, 24, 25 and 40 of the `525 patent.  The current litigation, however, is not the only occasion this Court has been faced with construing the claims of the `525 patent.  This Court previously presided over litigation involving the `525 patent in *SFA Systems, LLC v. INFOR Global Solutions (Michigan), Inc*, et al., 2009 U.S. Dist. LEXIS 13705 (E.D. Tex. February 23, 2009).

In the *Infor* case, the Court, with the assistance of a technical advisor, construed numerous terms of the `525 patent.  *See* Memorandum Opinion Construing U.S. Patent No. 6,067,525 (E.D. Tex. February 23, 2009) (Dkt No. 211) (the "067 Action Claim Construction Order").  The Defendants in the current litigation are asking the Court to reconsider its carefully considered construction of most of these previously construed terms and propose new and improper constructions for them.  In addition, the Defendants contend that several claims lacking the word "means" should nevertheless be construed pursuant to 35 U.S.C. § 112, ¶ 6 as means-plus-function claims in derogation of the presumption that such claims should not be construed under Section 112 ¶ 6, and evidence of sufficient structure recited in the claims.  The Defendants also propose misleading and limitation-laden constructions at odds with the claim language and the specification's teaching regarding the meaning of these terms.  Numerous other terms disputed by Defendants involve common and familiar language for which a separate construction

---

[1]  A copy of the `525 patent is attached as Exhibit A.

would only add confusion and provide no help to the jury.  The Defendants further contend that the well-understood terms "automatic" and "automatically" are indefinite.  While SFA properly proposes ordinary-language or plain-meaning constructions for the terms at issue, Defendants repeatedly and improperly propose constructions that either ignore or directly conflict with the express language of the claims and the teaching of the specification.

## II.   THE `525 PATENT

The nature of the invention disclosed in the `525 patent is described in the Court's previous claim construction order.   067 Action Claim Construction Order at 1-2.   The specification of the `525 patent succinctly explains that "[t]he present invention is directed to a sales force automation system and, more particularly, to an automated sales system which facilitates the sale of an item or service by intelligently integrating into a single system tools used by a salesperson in the sales process."  Col. 1, ln 5-9.  The specification points out that "[m]ost conventional sales systems have been implemented in a limited manner and are typically directed solely to a particular event, task or small subset of tasks in the sales process."  *Id.* at Col. 1, ln 10-13.  "Such systems," the specification teaches, "are individually developed without regard for other events occurring in the overall sales process in which the salesperson is engaged.  As a result, conventional systems fail to provide full support for the salesperson."  Col. 1, ln 16-19.

The invention disclosed in the `525 patent overcomes these problems by providing an improved system for facilitating a sales process. Col. 2, ln 21-22.  The specification teaches that one example of this improved system includes a plurality of subsystems each corresponding to a phase of the sales process to facilitate one or more events occurring in the corresponding phase of the sales process.   The system also includes an event manager coupled to each of the subsystems that recognizes an event carried out by one of the subsystems and determines the

context in which the recognized event occurs and then automatically initiates an operation in a another subsystem to facilitate a new event in the sales process on the basis of the context in which the recognized event occurs.  Col. 2, ln 25-34.

### III.     GENERAL PRINCIPLES GOVERNING CLAIM CONSTRUCTION

SFA proposes constructions for the disputed terms of the `525 patent in accordance with long-established principles of claim construction: giving a claim term the full breadth of its ordinary meaning that one of skill in the art, at the time of the invention and in light of the patent's specification and prosecution history, would have given it, except in those circumstances in which the intrinsic record provides a definition for the term.  *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1316-17 (Fed. Cir. 2005). Because the Court is familiar with this law, SFA will discuss specific claim construction principles only where they are applicable to the terms in dispute.

### IV.     LEVEL OF ORDINARY SKILL IN THE ART

Claims are to be construed from the viewpoint of a person of ordinary skill in the art at the time of the invention.  *Phillips v. AWH Corp.*, 415 F.3d at 1313.  The level of ordinary skill is a function of many factors, including: "(1) the educational level of the inventor; (2) type of problems encountered in the art; (3) prior art solutions to those problems; (4) rapidity with which innovations are made; (5) sophistication of the technology; and (6) educational level of active workers in the field."  *Daiichi Sankyo Co. Ltd. v. Apotex, Inc.*, 501 F.3d 1254, 1256 (Fed. Cir. 2007) (citation omitted).  Considering all of those factors in the context of the technology of the `525 patent, one of ordinary skill in the art in the 1995 time frame would have been a person having at least a bachelor's degree in computer science, engineering, or a related field, and having some experience developing sales force automation applications or equivalent experience

in developing software for automating business processes.  *See* Declaration of Monty Myers at ¶ 19 (attached as Exhibit B).

## V.  ARGUMENT REGARDING CONSTRUCTION
## OF THE MATERIAL CLAIM TERMS IN DISPUTE

### A.      AGREED CLAIM CONSTRUCTIONS

The parties have agreed to the construction of the following claim terms:

| Claims | Claim Term | Agreed Upon Construction |
|--------|-----------|--------------------------|
| 1, 20, 24-25, 40 | "inferring" | "logical process by which a factual conclusion is derived from known facts by the application of logical rules" |
| 1, 20, 40 | "inferring occurrence of an event" | "logical process by which the fact that an event has occurred is derived by application of logical rules" |
| 1, 20, 40 | "changes in state characteristic of an event" | "a change in a unique configuration of information within the system that is indicative of the occurrence of an event within the system." |
| **Claims** | **Claim Term** | **Agreed Upon Order of Performance of Method Steps** |
| 20 | "the method comprising the steps of: automatically detecting . . .; inferring . . .; and automatically initiating . . . ." | Sequential, in the order written (*i.e.* [1] automatically detecting…, [2] inferring occurrence…, and [3] automatically initiating…) |

### B.      DISPUTED CLAIM TERMS

### 1.      A computer implemented sales system used to facilitate a sales process, the system comprising . . . .

This disputed claim language appears in the preambles to Claims 1 and 40, which are system claims.  These preambles are not claim limitations, except to the extent the phrase "a computer implemented sales system" is the antecedent reference for the term "the computer used in the body of Claim 1, and the phrase "a sales process" is the antecedent reference for the term

"the sales process" used in the body of both Claims 1 and 40.  These preambles, as a whole, merely state the purpose or intended use of the claimed invention.  Thus, only the antecedent references themselves constitute a limitation regarding these claims.

"Preamble language that merely states the purpose or intended use of an invention is generally not treated as limiting the scope of the claim."  *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 952 (Fed. Cir. 2006) (citing *Boehringer Ingelheim Vetmedica, Inc. v. Schering-Plough Corp.,* 320 F.3d 1339, 1345 (Fed. Cir. 2003); *Rowe v. Dror,* 112 F.3d 473, 478 (Fed. Cir. 1997)).  As this Court has explained, however, "[w]hen limitations in the body of a patent claim rely upon, and derive antecedent basis from, the claim preamble, the preamble may act as a necessary component of the claimed invention."  *Micron Technology, Inc. v. Tessera, Inc.*, 440 F.Supp. 2d 591, 614 (E.D. Tex 2006).   Thus, only the antecedent references in these preambles constitute claim limitations, and the preambles as a whole do not.   *See Abb Automation Inc. v. Schlumberger Res. Mgmt. Servs., Inc.*, 254 F.Supp. 2d 475 (D.Del. 2003) ("The antecedent basis for the "said input voltage" is within the preamble" and, therefore, a limitation. "However, the phrase 'for use in apparatus for electronically measuring or distributing electrical energy' merely indicates an intended use and does not operate to limit the scope of the claims.")

In *Micron*, for example, this Court found that the phrase "a memory array in which a plurality of memory circuit devices are arranged" was limiting because "memory array" and "memory circuit devices" provided an antecedent basis for those terms in the body of the claim in question (citing *Micron*, 440 F.Supp. 2d at 614-615).   "However," the Court held, "the remainder of the preamble is not limiting because it describes the claimed invention's purpose or intended use, rather than describing essential structure.  [citations omitted].  This segment of the preamble describes how the arrangement of memory devices may allow memory information to

be obtained, but it does not describe any essential structure." (citing *Micron*, 440 F.Supp. 2d at 615). Similarly, in *Eon Corp. IP Holdings, LLC v. Sensus USA Inc.*, 2010 U.S. Dist. LEXIS 83442 (E.D. Tex. Aug. 11, 2010), this Court found that "the preamble does not provide an antecedent basis for nearly all of the claim elements" and, therefore, held that the specific preamble phrase at issue which did not provide an antecedent basis was not a limitation. *Id*. at 8.

For the same reason, the preambles to Claims 1 and 40 are not claim limitations, except for the antecedent references "a computer implemented sales system" and "a sales process."

### a.   "a computer implemented sales system"

As discussed above, the phrase "a computer implemented sales system" in the preambles of Claims 1 and 40 is the antecedent reference for the term "the computer" appearing in the body of those claims. The phrase "a computer implemented sales system," however, is clear and understandable to the fact finder and does not require construction beyond its plain and ordinary meaning. *See Orion IP, LLC v. Staples, Inc.*, 406 F. Supp. 2d 717, 738 (E.D. Tex. 2005) (stating that "although every word used in a claim has meaning, not every word requires construction" in declining to construe claim terms).

The Defendants' proposed construction of these preambles -- "a computer providing salesperson support during a sales process" – is improper for several reasons. First, as discussed above, the preambles, as a whole, merely state the purpose or intended use of the claimed invention. Therefore, these preambles, as a whole, should not be construed as limitations. Only the antecedent references in the preambles should be considered claim limitations, and only to provide the antecedent references.

Second, the Defendants' proposed construction goes far beyond making that claim language a limitation. It rewrites the claim language and injects limitations into the claims not

dictated by the specification or any other evidence.   Specifically, the Defendants' proposed construction rewrites the preambles – substituting "a computer" for "a computer implemented sales system" and "providing salesperson support during a sales process" for "used to facilitate a sales process."   The term "providing salesperson support" is a limitation the Defendants are improperly attempting to read into the unambiguous claim language.   This specific term does not even appear in the specification.   Although the phrase "salesperson support system" does appear in the specification, this hardly is a basis for injecting the Defendants' mutation of this term into the claim language.   *See Comark Communs, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998) ("'[a]lthough the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims.'") (quoting *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988)); *see also Phillips*, 415 F.3d at 1323.   That the purpose of the claimed invention is to assist salespersons, is not a basis for reading the Defendants' proposed language into the individual claims.

Finally, there is nothing in the prosecution history to suggest that the inventors clearly disclaimed or disavowed claim coverage mandating that the Defendants' proposed claim construction be adopted.   The prosecution history cited by the Defendants' in the Joint Claim Construction Statement simply reflects the inventors' contention that the Negrino reference at issue did not teach or suggest integration of a plurality of subsystems for facilitating a sales process, and did not teach facilitating a new action based upon an inferred context.   Exhibit B at TRI00261; Exhibit C at TRI00286; Exhibit D at TRI00303; Exhibit E at TRI00341-344. There is no discussion in the prosecution history that would support mutating "used to facilitate a sales

process" to "providing salesperson support during a sales process."  Thus, the Court should reject the Defendants' attempt to rewrite and inject limitations into this claim language.

      **b.**      **"a sales process"**

As mentioned above, the term "a sales process" used in the preambles for Claims 1, 20 and 40 is the antecedent reference for the term "the sales process" used in the bodies of these claims.  The term "a sales process" means "the process of selling goods or services, which may include, but is not limited to, generating a lead, completing a sale, managing an order, retaining a customer, or any other interaction with a customer throughout this process."[2]

This construction is supported by the claim language of asserted claims 1 and 20 stating that the claimed system and method involves "a plurality of subsystems configured to facilitate **one or more actions performed during at least one phase of the sales process**."  Col. 35, ln 65-67; Col. 37, ln 34-36 (emphasis added).  This claim language confirms that the claimed system does not have to facilitate **every phase** of a given sales process, as the Defendants' proposed construction incorrectly requires.  Similarly, the language in Claim 40 providing for the event manager to "link the inferred event with **an action to be performed during the sales process** . . ." confirms that the claimed invention can be implemented at any point during the sales process, and does not have to be implemented throughout the process.  *See* Col. 39, ln 22-23 (emphasis added).

Furthermore, these asserted claims of the `525 patent expressly state that the event manager of the claimed system or method may infer the occurrence of a single event occurring, and then may automatically initiate a single new action "in one or more particular subsystems." Col. 36, ln 5, 8-10; Col. 37, ln 40, 43-45.  This can be accomplished during one or more of the

---

[2]  This proposed construction is a slight modification of SFA's original proposed construction intended to make the proposed construction simpler and easier to understand.

phases of a given sales process.  This claim language further confirms that the claimed system does not have to facilitate **every phase** of an overall sales process.

This Court pointed out in its previous order construing the claims of the `525 patent that "[t]he claims themselves provide substantial guidance in determining the meaning of particular claim terms," and that "a term's context in the asserted claim can be very instructive."  067 Action Claim Construction Order at 2 (citing *Phillips*, 415 F.3d at 1314).  Thus, the term "a sales process" should be construed as a flexible term that includes one or more of the phases of a given sales process, but does not require the claimed system or method to facilitate only every phase of the entire sales process.

The doctrine of claim differentiation also supports SFA's position that the Defendants' proposed additional limitation of facilitating every phase of a given sales process should not be read into the claims.  The Federal Circuit has held, "the presence of a dependent claim that adds a particular limitation raises a presumption that the limitation in question is not found in the independent claim." *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 910 (Fed. Cir. 2004) (citing *Wenger Mfg., Inc. v. Coating Mach. Sys., Inc.*, 239 F.3d 1225, 1233 (Fed.Cir.2001) and *Comark Communs, Inc.*, 156 F.3d at 1187 (Fed. Cir. 1998).  Unasserted dependent claims 5-12 show that the asserted claims cannot be restricted to a system facilitating all phases of a given sales process.  These dependent claims enumerate specific subsystems that ***must*** be involved in the claimed system.  These subsystems correspond to various phases of the sales process.  For example, Claim 5 adds the requirement that the plurality of subsystems must include "a time with the customer subsystem" and "a lead generation subsystem."  These requirements would be rendered superfluous under the Defendants' construction, which would require those limitations to be present in Claim 1.  A construction that creates redundancies in the claims should be

rejected.  *See Curtiss-Wright Flow Control Corp. v. Velan, Inc.*, 438 F.3d 1374 (Fed. Cir. 2006); *see also Jack Guttman, Inc. v. KopyKake Enter., Inc.*, 302 F.3d 1352, 1357 (Fed. Cir. 2002). Because claim 5 would redundantly require "a time with the customer subsystem" and "a lead generation subsystem" if the "sales process" of claim 1 is construed to require the Defendants' four specific phases including them, such a construction must be rejected.

The specification of the `525 also supports SFA's proposed construction.  The abstract of the patent states that the claimed sales force automation system "integrates computerized, intelligent automated salesperson support for **multiple phases of the sales process**."   `525 Patent, Abstract (emphasis added).   This language teaches that the claimed invention can facilitate multiple phases of the sales process, but does not require it to support **all phases** of the process, or limit what phases constitute a given sales process.   The specification, in describing one of the embodiments of the claimed invention, states that "[t]he system includes a plurality of subsystems each corresponding to a phase of the sales process **to facilitate one or more events occurring in the corresponding phase of the sales process**."   Col. 2, ln 22-28 (emphasis added).   This specification language mirrors the claim language discussed above establishing that the claimed invention can facilitate one or more phases of a sales process, and confirms that the invention is not limited to a system which facilitates only all phases of that process.

The specification at one point describes the components of a salesperson support system providing support "for the complete sales process," but emphasizes that:

> However, each of the above described components may not be needed in a particular sales environment.   Thus, various subset combinations of the sales system can be constructed depending on the functionality requirements of the product or service to be sold.

Col. 7, ln 43-48.  This language again confirms that the claimed invention can be implemented to facilitate fewer than all of the phases of a given sales process.  Indeed, the specification includes

several examples of the claimed invention being used to infer the occurrence of a single event occurring during one phase of the sales process and to link that event to a new action to initiate in the same or different phase of the sales process and facilitating that event.  Col. 28, ln 6-58; Col. 28, ln 60 to Col. 29, ln 52; Col. 29, ln 53 to Col. 30, ln 11.  Therefore, the term "a sales process" can constitute one or more of the phases of the overall sales process and is not limited to four specific phases (as Defendants require) of a given sales process.

Finally, the prosecution history does not establish that the inventors clearly disavowed or disclaimed claim scope requiring the term "a sales process" to be limited to all of the phases of a given or hypothetical sales process.  The doctrine of prosecution history disclaimer "limits the interpretation of claims so as to exclude any interpretation that may have been disclaimed or disavowed during prosecution in order to obtain claim allowance." *Omega Eng'g Inc. v. Raytek Corp.*, 334 F.3d 1314, 1323 (Fed. Cir. 2003). For the doctrine to apply, the disclaimer of claim scope must be clear and unmistakable. *Computer Docking Station Corp. v. Dell, Inc.*, 519 F.3d 1366, 1374 (Fed. Cir. 2008). Prosecution disclaimer does not apply where the prosecution history is ambiguous. *See id.* at 1375.

The portions of the prosecution history cited by the Defendants involved the inventors' distinctions of their invention from the *Negrino* reference.  During the prosecution history, the inventors never distinguished the *Negrino* reference on the ground that it did not disclose the "sales process" claimed in their invention.  To the contrary, the inventors explained that "the products described in *Negrino* are primarily directed to contact management. . . ." – only one phase of the entire sales process.  Exhibit B at TRI000261.  Nevertheless, the patentees described this system operating within this single phase of the sales process as teaching "a computer-based sales automation system that is **used in a sales process**." *Id.* (emphasis added).

Furthermore, during the prosecution history, the inventors described their invention as enhancing "the usefulness of the claimed invention in facilitating business efforts **in various phases of the sales process**." Exhibit B at TRI000262 (emphasis added).  Most importantly, the inventors explained that "the invention of Claim 1 is not limited to cases involving contacting the customer, but applies to **any other aspect of the sales process**, such as training salespersons." Exhibit E at TRI000344 (emphasis added).  Thus, the inventors confirmed that the claimed invention could apply to the "contacting the customer" phase of the sales process, or "any other aspect of the sales process."  The inventors distinguished the *Negrino* reference on the ground that it "fails to teach or suggest integration of a plurality of subsystems into a single system for facilitating a sales process," Exhibit B at TRI000261, and did "not provide an event manager that infers the context in which an event occurs, and it would not have been obvious to add contextual inferencing." Exhibit E at TRI000344.  The inventors did not distinguish that reference on the ground that it did not disclose facilitation of **four express phases** of an entire sales system.

This demonstrates that, during the prosecution history, the inventors did not disclaim or disavow coverage of a system that facilitates fewer than all of the phases of the sales process described in the specification.  Thus, this prosecution history does not support Defendants' contention that the asserted claims are limited to a system that facilitates at least four phases of an entire sales process.

### 2.     "A method of facilitating a sales process using a computer arrangement"

This disputed claim language appears in the preamble to Claim 20, which is a method claim.  As with the preambles of Claims 1 and 40 discussed above, this preamble is not a claim limitation, except to the extent the phrase "a computer arrangement" is the antecedent reference for the term "the computer arrangement" used in the body of Claim 20, and the phrase "a sales

process" is the antecedent reference for the term "the sales process" used in the body of the claim.  As with the preambles of Claims 1 and 40, this preamble, as a whole, merely states the purpose or intended use of the claimed invention.  The same analysis discussed above regarding Claims 1 and 20 applies equally to this claim construction issue.  As that analysis demonstrates, only the antecedent references themselves constitute a limitation regarding these claims.

The Defendants' proposed construction of this language – "using a computer providing salesperson support during a sales process" – is another improper attempt to rewrite and inject limitations in claim language.  As with the preambles to Claims 1 and 40, the Defendants' proposed construction substitutes "using a computer" for "using a computer arrangement" and "providing salesperson support during a sales process" for "facilitating sales process," and reverses the order of these substituted terms.  There is no justification for reconstructing and reconfiguring the language of this preamble in this manner.

### a.    "a computer arrangement"

As discussed above, the phrase "a computer arrangement" in this preamble is the antecedent reference for the term "the computer" appearing in the body of Claim 20.  The phrase "a computer arrangement" is clear and understandable to the fact finder.  Thus, the term does not require claim construction and should be given its plain and ordinary meaning.

### b.    "a sales process"

As discussed above, the phrase "a sales process" in this preamble is the antecedent reference for the term "the sales process" appearing in the body of Claim 20.  The same construction applicable to the same term used in Claims 1 and 40 discussed above applies to this same claim language for the same reasons.

### 3.    "event occurring within the system"/"event occurring in the system"

These two claim terms appear in Claims 1 and 40.  This claim language does not require construction and should be given its plain and ordinary meaning.  Alternatively, the term "event occurring within/in the system" should be construed to mean "any identifiable occurrence or happening, or lack thereof, which has significance for system hardware or software."[3]

The `525 patent uses the word "event" in a variety of contexts encompassing a broad meaning.  The specification identifies two categories of events relevant to the claimed invention – "application events" and "sales events."  The specification explains that:

> Application events in the disclosed embodiment are internal to the sales system and generally represent a sales event occurring in the sales process.  In other words, a sales event may be an event in the sales process, typically occurring between the salesperson and the customer, while an application event may be an internal operation of the sales system (i.e., the operation of the software and hardware making up the sales system) which is used to electronically facilitate the sales event. In such a system, the occurrence of a sales event can be made known to the sales system by the occurrence of an application event.  For example, the generation of a proposal for a customer is a sales event which occurs in the time with customer phase of the sales process. When the sales system is used to generate the proposal, a business object of the proposal generation module in the time with customer component typically will be used by the system.  As described more fully below, such use of this business object will inform the sales system that the generation of a proposal has just occurred in the sales process. This information may then be used by the sales system to facilitate (or initiate) specified application events, which in turn drive sales events (e.g., to enter tasks into a to-do list for actions to be taken by the salesperson or to automatically carry out a task in the sales process).
>
> As can be appreciated, in many instances a sales event and its related application event may be used interchangeably to describe an event.

Col. 30, ln 34-61.  An "event occurring within the system," therefore, is anything that occurs within the system that has some significance for the system hardware or software.  It **may be** an operation performed by the system, but the specification teaches that it is not limited to such an

---

[3]  This brief will use the word "within" with respect to both claim terms for the sake of simplicity.

"operation."   An application event can be the system's use of information to initiate another application event.  As the specification states, "the business objects can trap application events (which represent actions by the user) and apply a set of behavior rules to the application events.  A typical business object may provide or receive information to or from a user through the occurrence of an application event." Col. 30, ln 29-33.

SFA's proposed construction is consistent with this description of events in the specification.  An event occurring within the system can be any identifiable occurrence or happening, or lack thereof, which has significance for system hardware or software.  It is not limited to a hardware or software operation, as the Defendants' proposed construction would require ("a hardware or software operation that has occurred internal to the sales system").

Also, the event occurring within the system can be the lack of occurrence that has significance to the systems' hardware and software.  Figures 21A-21E of the `525 patent identify a substantial number of exemplary "events" which can occur during the sales process.  Importantly, Figures 21A-21E depict events as both the occurrence of something, or the lack of occurrence of something.  For example, Figure 21A identifies as an event the fact that a "[s]alesperson fails to make any initial contact or follow-up to a qualified lead.  Figure 21B identifies as an event the fact that "[a] salesperson frequently fails to offer creative finance options when proposing a finance payment for a product purchase."  It is easy to conceive of examples of the non-occurrence of something as an event of significance to system hardware or software (e.g. the system does not generate a proposal with a prescribed period of time, a proposal is not sent to a lead within a prescribed period of time, a lead fails to respond to a proposal or request for information, an order is not generated or fulfilled within a prescribed period of time).  The Defendants' proposed construction does not encompass these aspects of the

meaning of an event occurring within the system.  A claim construction that would read out a disclosed preferred embodiment is rarely, if ever, correct.  *Primos, Inc. v. Hunter's Specialties*, 451 F.3d 841, 849 (Fed. Cir. 2006).

For this reason, if the claim language in dispute requires construction at all, the term "event" as used in the claims must be construed broadly, to encompass both the occurrence or lack of occurrence of something.  This is consistent not only with the teaching of the specification, but also with the definition of the word in technical dictionaries.  *See* Exhibits F-H.

**4.**      **"event occurring in the sales process"**

This claim language appears in method Claim 20.  SFA contends that this claim language does not require construction and should be given its plain and ordinary meaning known to a person of ordinary skill in the art.  The Court is already construing the terms "event" and "a sales process."  Thus, the Defendants are seeking the Court to construe the word "occurring," which is a well-known term not requiring construction.  In any event, were the Court to construe the term "event occurring in the sales process," it should be construed to mean "any identifiable occurrence or happening, or lack thereof, which is part of a sales process"

This claim language is slightly different from the claim language discussed above in that it addresses an event occurring "in the sales process" and not "within the system."  The term "sales process" should be given the same construction as discussed above.  There is no need to reconstrue this term in the context of this claim language.  The language proposed for the construction of the term "event" is the same as discussed above, and is consistent with the teaching of the specification and the technical dictionaries defining the word in the context of computer systems.

The Defendants' proposed construction – "a salesperson's action that has occurred external to the sales system" – is contrary to the claim language, the teaching of the specification and the computer dictionary definitions of the term "event."

First, the claim language uses the word "event" in the context of the sales process without any further limitation regarding who is responsible for causing the event to occur. The Defendants have simply rewritten the claim language to substitute the limitation "a salesperson's action" for the word "event." Not only is such rewriting of the claim language improper, but it is contrary to the teaching of the specification. Nowhere does the specification suggest, much less compel the conclusion, that an event occurring during the sales process is limited to a salesperson's action. To the contrary, the specification teaches just the opposite. For example, the events depicted in Figure 21A include "[a] customer contacts an Internet Web-Site to get product information," and "[a] customer uses a kiosk to gain information on a product or service and request[s] follow-up call from company representative." The events depicted in Figure 21D include "[c]ustomer directly contacts the manufacturer regarding a product problem," "[c]ustomer brings the product in [to] the dealer for service," and "customer approves the proposal and signs the order." The events depicted in Figure 21E include "[c]ustomer requests to know delivery date for product . . . ." The written description itself contains several examples of an event occurring during the sales process initiated by a customer or someone other than a "salesperson." *See, e.g.*, Col. 18, ln 37-41 (describing the recognition of a customer order) and Col. 30, ln. 35-43 (describing application events internal to the operation of the sales system). The Defendants' "a salesperson's action" limitation is entirely improper.

The Defendants also improperly attempt to inject into the claim language the limitation requiring the event to occur "external to the sales system." The claim language simply uses the

language an "event occurring in the sales *process*." There is no basis for rewriting this language to say an event occurring "external to the sales *system*." There is no claim language, teaching in the specification, or other intrinsic or extrinsic evidence suggesting that an event occurring "in the sales process" can only occur "external to the sales system." To the contrary, the specification teaches that events occurring within the system, such as the generation of a proposal, are occurring "in the sales process." *See* Col. 30, ln 34-61 ("For example, the generation of a proposal for a customer is a sales event which occurs in the time with customer phase of the sales process. When the sales system is used to generate the proposal, a business object of the proposal generation module in the time with customer component typically will be used by the system.") The generation of a proposal for a customer is both a sales event occurring in the sales process and an event occurring within the system. As the specification explains, "[a]pplication events in the disclosed embodiment are internal to the sales system and generally represent a sales event occurring in the sales process." *See* Col. 30, ln 34-35. Moreover, the specification emphasizes that "in many instances **a sales event and its related application event may be used interchangeably to describe an event**." Col. 30, ln 60-61 (emphasis added). The claim language does not limit the "events" to "application events" or "sales events." Thus, it would be improper to limit the "events occurring in the sales process" to only events occurring "external to the sales system."

5.        "context"

This term appears in each of the asserted claims. In the *Infor* case, this Court adopted the parties' agreed construction of this term as meaning "information already existing within the system that becomes relevant upon the occurrence of an event." 067 Action Claim Construction Order at 7. In adopting the agreed claim construction, this Court stated that, "[t]hough this term

was originally disputed, during the hearing both sides agreed that the definition of the term is "information already existing within the system that becomes relevant upon the occurrence of an event." This definition is in conformity with the claim language, specification, and prosecution history and is adopted accordingly." *Id*. Thus, in the *Infor* case, the Court independently confirmed that this was the proper construction of the term "context, and the Court's construction of this term should apply in the current litigation.

The Defendants contend that the Court's previous construction is incorrect and propose the following new construction of the term: "context" means "customer-related information already existing within the system that becomes relevant upon the occurrence of an event." Stated succinctly, the Defendants want to require that the contextual information only be "customer-related" information. There is no support for this limitation in the claim language, specification or any other intrinsic or extrinsic evidence.

The claims themselves provide substantial guidance in determining the meaning of particular claim terms. *Phillips*, 415 F.3d at 1314. The claim language in question speaks only of "context," and not "customer-related" context, and there is no other claim language suggesting that the term "context" should be limited to only customer related information. Once again, the Defendants are rewriting the claim language improperly to impose unwarranted limitations on the claims as written and allowed.

In addition, the specification does not contain any discussion of the term "context" that would justify imposing a "customer related" information limitation on the term. The specification, when discussing the context of an event, describes "context" as "information" that is relevant without requiring the information be "customer related." *See* Col. 32, ln 57-59 ("Further intelligence may be provided in the system to evaluate the context in which the sales

event occurs (e.g., the significance of other information in the system)").   Although the specification may discuss an example of the event manager checking "customer information" to make a determination about further action, *see, e.g.* Col. 32, ln. 59-62, the discussion is merely an example.   "Although the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims."   *Constant,* 848 F.2d at 1571; *see also Phillips*, 415 F.3d at 1323.

In one disclosed embodiment, the specification points out that the "customer module," which is where "customer-specific information" is collected, is only one of several modules consulted by the event manager for context surrounding the occurrence of an event.   Other modules the event manager consults include the "product module" containing various information about products that is not "customer related" information. *See* Col. 12, ln 22-41. The event manager may consult this module to make present a comparison of competitive products. *See* Col. 12, ln 42-57.  The event manager may also consult a "configuration module" to obtain product configuration information as context for the configuration of a product for a customer.  This is context is not "customer related" information.  The event manager may also consult inventory information as context for a customer's order to ensure a customer's order can be filled with existing inventory or to order additional inventory to satisfy the customer's order. This too is not "customer related" information.  *See* Col. 15, ln 4-6.

Thus, there is no basis for limiting the term "context" to "customer related" information. Such a limitation is contrary to the express claim language and teaching of the specification.  The Court's previous claim construction is correct.

6.      "inferring . . . a context in which the event occurred"

This term appears in independent Claims 1, 20 and 40.  In the *Infor* case, this Court construed this term to mean a "logical process by which the fact that information already existing within the system that becomes relevant upon the occurrence of an event is derived by application of logical rules." 067 Action Claim Construction Order at 15.  In reaching this conclusion, the Court pointed out that the component terms of this phrase had already been construed, "and there is no reason to provide an alternative construction to the phrases as a whole." *Id.*  The same is true now.  The parties have agreed to the Court's previous construction of the term "inferring," and, as discussed above, the Court has previously and correctly construed the term "context."   Therefore, the Court's previous construction of this term should apply in these current cases.

The Defendants' proposed construction carries forward its improper "customer related" limitation discussed above.  The Court should reject this construction for the reasons given above.  The Defendants also propose to modify the Court's construction by substituting the language "significance of . . . information . . . is evaluated with respect to the event" for the concept of deriving the fact that "information becomes relevant upon the occurrence of an event."   SFA submits that the Court's previous construction of the claim language is more consistent with that claim language, the specification and the prosecution history.

The parties agree that "inferring" means that a "factual conclusion is derived from known facts by the application of logical rules."  Thus, inferring a context is deriving the conclusion that certain information is relevant.  The Defendants' proposed use of "evaluating" the significance of information is not consistent with the agreed upon meaning of inferring.  The word "relevant" is also more accurate than "significance."   The specification consistently describes information

existing in the system that is considered in connection with initiating further action as "relevant" information.  *See* Col. 1, ln 67 to Col. 2 ln 2; Col. 3, ln 54-59; Col. 7, ln 48-53.  "Context" may include information that is relevant and should be considered by the system but which is ultimately determined not to be "significant" with regard to the initiation of any new action based upon the complete context.   Although the specification mentions that "[f]urther intelligence may be provided in the system to evaluate the context in which the sales event occurs (e.g., the significance of other information in the system)," Col. 32, ln 57-59, this language is discussing evaluating the context already inferred, not the inferring of a context itself.  The Defendants' proposed construction, therefore, improperly injects the limitations of "evaluate" and "significance" into the claim language.

### 7.      **"automatically initiating"/"automatically initiate"**

Claims 1, 20 and 40 of the `525 patent use the term "automatically initiate" or "automatically initiating."  SFA contends that these terms do not require construction.  *See Clear With Computers, LLC v. Bergdorf Goodman, Inc.*, 2011 U.S. Dist. LEXIS 861 (E.D. Tex. Jan. 5, 2011) (declining to construe the term "automatically selecting, in response to at least one of the customer answers, a product image, a product environment image and a text segment").

Alternatively, these terms should be construed to mean "initiating/to initiate without user intervention."[4]  This is the plain and ordinary meaning of the claim language.  *See VirnetX, Inc. v Microsoft Corp.*, 2009 U.S. Dist. LEXIS 65667 (E.D. Tex. July 30, 2009) (construing "automatically initiating the VPN" as "initiating the VPN without involvement of a user"); *Visto Corp. v. Microsoft Corp.*, 2007 U.S. Dist. LEXIS 68226 (E.D. Tex. Aug. 28, 2007) (construing "automatically generating a filing identifier" as "creating a filing identifier with information

---

[4]  This is a slight modification of SFA's original proposed construction made to conform more closely to the Court's prior constructions of this term.

entered in one of the other fields without user intervention"); *Omax Corp.* v. *Flow Int'l. Corp.*, 2006 U.S. Dist. LEXIS 81914 (WD. Wash., Nov. 7, 2006) (construing the term "automatically" as "performed without manual intervention").   This construction also is consistent with the teaching of the specification, which describes performing an operation "automatically" as doing so without further user interaction.   *See* Col. 29, ln 21-35 ("the system automatically creates the follow-up to do list and updates the opportunity status without requirement of any further interaction with the user.")   The Defendants' contention that the term "automatically" is indefinite flies in the face of this case law and the teaching of the specification.

**8.     35 U.S.C. §112 ¶ 6 Issues**

The Defendants contend that certain claim limitations found in the asserted independent claims (Claims 1, 20 and 40) should be construed as means plus function claims pursuant to 35 U.S.C. § 112 ¶ 6, even though these claims do not contain the critical word "means."   The two claim limitations are the (1) the "plurality of subsystems configured to . . ." elements in Claims 1, 20 and 40, and (2)  the "event manager, coupled to the subsystems, . . ." elements in Claims 1 and 40.

35 U.S.C. Section §112 ¶ 6 provides that:

> An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

35 U.S.C. § 112 ¶ 6.   The task of determining whether a particular claim limitation should be regarded as a means-plus-function limitation subject to Section 112 ¶ 6 is a matter of law for the court. *Lighting World, Inc. v. Birchwood Lighting, Inc.*, 382 F.3d 1354, 1358 (Fed. Cir. 2004).

The claim limitations which the Defendants contend constitute means plus function claims do not contain the word means.   When a claim term does not use "means," the term is

presumptively not subject to § 112, ¶ 6. *CCS Fitness v. Brunswick Corp., 288 F.3d 1359, 1369 (Fed. Cir. 2002)*; *MIT v. Abacus Software,* 462 F.3d 1344, 1353 (Fed. Cir. 2006).   "[T]he presumption flowing from the absence of the term 'means' is a strong one that is not readily overcome." *Lighting World*, 382 F.3d at 1358.   A limitation lacking the term "means" may overcome the presumption if it is shown that "the claim term fails to recite sufficiently definite structure or else recites function without reciting sufficient structure for performing that function."  *MIT,* 462 F.3d at 1353, *quoting CCS Fitness,* 288 F.3d. at 1369.

In considering whether a claim term recites sufficient structure to avoid the application of Section 112 ¶ 6, it is not required that the claim term "denote a specific structure." *Id.* at 1359.  Rather, "it is sufficient if the claim term is used in common parlance or by persons of skill in the pertinent art to designate structure, even if the term covers a broad class of structures and even if the term identifies the structures by their function." *Id.* at 1359-60. The question is "whether the term is one that is understood to describe structure, as opposed to a term that is simply a nonce word or a verbal construct that is not recognized as the name of structure and is simply a substitute for the term 'means for.'" *Id.* at 1360; *see also Personalized Media Communs v. ITC,* 161 F.3d 696, 704 (Fed. Cir. 1998).  The court must assess whether the term at issue "as the name for structure, has a reasonably well-understood meaning in the art."  *Greenberg v. Ethicon Endo-Surgery,* 91 F.3d 1580, 1583 (Fed. Cir. 1996) (consulting technical dictionaries to determine that the word "detent" "denotes a type of device with a generally understood meaning in the mechanical arts).

The claim limitations "plurality of subsystems configured to . . ." and "event manager, coupled to the subsystems, . . ." recite sufficient structure to dispel any argument by the Defendants that they are means plus function claims.

   **a.**      **"subsystem"**

As pointed out in the Declaration of Monty Myers (attached as Exhibit I):

> Although the term "subsystem" is a broad term, "the structure it connotes is
> sufficient for a person of ordinary skill to understand the invention in the context
> of the claim.   A person with skill in developing sales force automation,
> particularly when looking at the specification of the '525 patent and the dependent
> claims which give specific examples of subsystems such as claims 5 through 12,
> would recognize the structural meaning of term, specifically that the term refers to
> a system within a larger system.  The examples given in the dependent claims and
> specification are not necessary to understanding the meaning, but merely serve to
> confirm the well known meaning.

Myers Declaration at ¶ 22.  Furthermore, Myers points out in his declaration that:

> The person of ordinary skill would not need specific information on exactly what
> types of subsystems could be configured to facilitate one or more actions
> performed during at least one phase of the sales process in order to understand the
> claimed invention.  The remainder of the claim describes an event manager, and
> the invention in its broadest form does not limit that event manager being coupled
> to a particular plurality of subsystems. To the extent a person of ordinary skill
> would have found examples of subsystems informative, he or she could find them
> in the dependant claims and the specification. They include time with customer
> subsystems, lead generation subsystems, order management subsystems, customer
> retention subsystems, self management subsystems, and sales management
> subsystems. The examples are illustrative but not strictly necessary for
> understanding the invention. They confirm that the term "subsystem" is used with
> the typical "system within a larger system" meaning.

Myers Declaration at ¶ 23.   In addition, the terms "subsystem" and "configured" each have a

reasonably well-understood meaning in the art.  This is evidenced by the technical dictionary

definition of the term.   *See* Exhibits J and K.   Indeed, this Court in its previous claim

construction order pointed out that the defendant in that case "concedes that SFA's definition [of

"subsystem"] is commonly understood and does not dispute its accuracy."   067 Action Claim

Construction Order at 16.  The Court found that, "[i]n light of the claims and specification, no

additional limitations must be imposed upon a 'subsystem.'  Therefore, the term is construed in

accordance with its ordinary interpretation: "a system that is part of a larger system.'"  *Id.*

b.    "event manager"

In addition, as pointed out in the Myers declaration, "[t]he term 'event manager' described a well known concept in software engineering at the time the `525 Patent was filed. Conventionally, an event manager is a task or process that fetches or receives certain types of input stimuli and either directly processes it or forwards it onto an appropriate handler routine." Myers Declaration Exhibit I at ¶ 25.   Myers also points out that the 1993 Microsoft Visual Basic Programmer's Guide (Exhibit L) describes the well-known concept of "event-driven programming," which a person of ordinary skill familiar with event-driven programming would understand to be analogous to an "event manager" in this context.   Myers Declaration Exhibit I at ¶ 29.   This document contains an explanation of the basic concepts used when creating an "event manager."  *Id*.   This is only one of many references published at the time the `525 Patent was filed reflecting that the term "event manager" has a reasonably well-understood meaning in the art.  *See also* Exhibits M-O.  *See also* Myers Declaration Exhibit I at ¶¶ 31-32.

In *Mesh Comm, LLC v Pepco Energy Servs*., 2010 U.S. Dist. LEXIS 137029 (D. Md. Dec. 29, 2010), the court addressed the defendant's argument that a claim element containing the language "an event management module configured to process and manage occurrences or the pre-specified events" should be treated as a means plus function claim under  35 U.S.C. § 112 ¶ 6.   The court rejected the argument and the claim language recited sufficient structure.   In particular, the court found that:

> . . . the module limitations in the present case do describe meaningful structure, and this fact takes those claims out of the ambit of § 112 ¶ 6.   As previously mentioned, every module limitation in the '981 Patent refers to a subpart or component of the virtual network operations entity – they are defined components of a larger entity, which is itself defined.   As such, the '981 Patent's module references would convey to a person skilled in the art the requisite structure for performing the claimed functions, and the module limitations of the '981 Patent should not be treated as means plus function limitations.

*Id*. at 20.   Similarly, the "plurality of subsystems" and "event manager" limitations recite sufficient structure to take those claims in the `525 patent out of the scope of Section 112 ¶ 6.

      **c.**      **"coupled to"**

The "event manager" claim language includes the term "coupled to."   This term should be construed to mean ""directly or indirectly connected."   The specification teaches that this is the correct interpretation of this language.   For example, the specification explains that "the various components can be loosely coupled . . . to [form] a customized integrated sales system." Col. 7, ln 54-56.   The specification also states as follows, referring to Figure 2: "each of the various components of the salesperson support system 100 are communicatively coupled to an event manager 201A via respective lines 204, 206, 210, 212 and 214."   Col. 8, ln 22-25.   The lines are not directly connected from the subsystems to the event manager.   *See also Negotiated Data Solutions, LLC v. Dell, Inc*., 596 F.Supp. 2d 949, 964 (E.D. Tex. Jan. 16, 2009) (construing "coupled" to mean "connected directly or indirectly").

//

//

//

//

//

//

//

## VI.    CONCLUSION

For the foregoing reasons, the Court should construe the disputed claim terms as proposed by Plaintiff SFA.

Dated: February 25, 2011                     Respectfully submitted,

                                             **BUETHER JOE & CARPENTER, LLC**

                              By:      */s/ Eric W. Buether*
                                       Eric W. Buether
                                       State Bar No. 03316880
                                       Eric.Buether@BJCIPLaw.com
                                       Christopher M. Joe
                                       State Bar No. 00787770
                                       Chris.Joe@BJCIPLaw.com
                                       Brian A. Carpenter
                                       State Bar No. 03840600
                                       Brian.Carpenter@BJCIPLaw.com

                                       1700 Pacific Avenue
                                       Suite 2390
                                       Dallas, Texas 75201
                                       Telephone:    (214) 466-1271
                                       Facsimile:    (214) 635-1827

                                       Andrew Wesley Spangler
                                       State Bar No. 24041960
                                       Spangler Law PC
                                       104 N. Houston St., Suite 135
                                       Marshall, Texas  75670
                                       Telephone:    (903) 935-3443
                                       Facsimile:    (903) 938-7843
                                       spangler@spanglerlawpc.com

David M. Pridham
RI State Bar No. 6625
Law Office of David Pridham
25 Linden Road
Barrington, Rhode Island 02806
Telephone:     (401) 633-7247
Facsimile:     (401) 633-7247
david@pridhamiplaw.com

**ATTORNEYS FOR PLAINTIFF**
**SFA SYSTEMS, LLC**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a) on this 25th day of February 2011. Any other counsel of record will be served by facsimile transmission and first class mail.

*/s/ Eric W. Buether*
Eric W. Buether