# Exhibit C

**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | | |
|---|---|---|
| SFA SYSTEMS, LLC, | § | |
| | § | |
| Plaintiff, | § | C.A. NO. 6:09-CV-00340-LED |
| | § | |
| v. | § | JUDGE LEONARD E. DAVIS |
| | § | |
| 1-800-FLOWERS.COM, Inc., | § | JURY TRIAL DEMANDED |
| ET AL., | § | |
| | § | |
| Defendants. | § | |
| _____ | § | |

## JOINT INVALIDITY CONTENTIONS

Pursuant to P.R. 3-3 and the Court's Docket Control Order, Defendants 1-800-Flowers.com, Inc., The Plow & Hearth, Inc., including d/b/a Wind & Weather, Inc., The Popcorn Factory, Inc., Winetasting Network, Inc., The Children's Group, Inc., Barnes & Noble, Inc., Barnesandnoble.com LLC, Blockbuster Inc., Build-A-Bear Workshop, Inc., GameStop, Corp., GameStop, Inc., GameStop.com, Inc., Gander Mountain Company, Overton's, Inc., J&R Electronics, Inc., Newegg, Inc., Newegg.com, Inc., Northern Tool & Equipment Company, Inc., Office Depot, Inc., Omaha Steaks International, Inc., OmahaSteaks.com, Inc., and The Timberland Company (collectively, "Defendants") submit their Joint Invalidity Contentions. Defendants' investigation regarding prior art grounds of invalidity is on-going and Defendants reserve all rights to further supplement or amend these Joint Invalidity Contentions as permitted by the Patent Rules.

## I.      P.R. 3-3(a)-(b): Prior Art References

Pursuant to P.R. 3-3(a) and (b), Defendants identify each of the following items of prior art that anticipate the claims of U.S. Patent No. 6,067,525 ("the '525 Patent") under 35 U.S.C. § 102:

1. U.S. Patent No. 4,567,359, issued January 28, 1986 ("the '359 Patent") (Exhibit A) (D000001–14).

2. U.S. Patent No. 4,648,044, issued March 3, 1987 ("the '044 Patent") (Exhibit B) (D000015–69).

3. U.S. Patent No. 4,947,028, issued August 7, 1990 ("the '028 Patent") (Exhibit C) (D000070–83).

4. U.S. Patent No. 5,103,498, issued April 7, 1992 ("the '498 Patent") (Exhibit D) (D000084–107).

5. U.S. Patent No. 5,195,031, issued March 16, 1993 ("the '031 Patent") (Exhibit E) (D000108–415).

6. U.S. Patent No. 5,347,632, issued September 13, 1994 ("the '632 Patent) (Exhibit F) (D000416–484).

7. U.S. Patent No. 5,570,291, issued October 29, 1996, filed August 31, 1994 ("the '291 Patent) (Exhibit G) (D000485–528).

8. U.S. Patent No. 5,660,176, issued August 26, 1997, filed December 29, 1993 ("the '176 Patent) (Exhibit H) (D000529–604).

9. U.S. Patent No. 5,774,868, issued June 30, 1998, filed December 23, 1994 ("the '868 Patent) (Exhibit I) (D000605–635).

10. U.S. Patent No. 5,999,908, issued December 7, 1999, filed September 19, 1997, continuation of Application No. 08/243,638 filed May 16, 1994 ("the Abelow Patent") (Exhibit J) (D000636–726).

11. U.S. Patent No. 6,005,531, issued April 25, 2000, filed June 23, 1997, continuation of Application No. 08/065,132 filed May 20, 1993 ("the '531 Patent") (Exhibit K) (D000727–756).

12. "Artificial Intelligence and Expert Systems in Accounting Databases: Survey and Extensions" 1991, Daniel O'Leary, *Expert Systems with Applications*, Vol. 3 ("the O'Leary Reference") (Exhibit L) (D000757–766).

13. Expert Systems: The Integrative Sales Management Tool of the Future, Summer 1987, Margery Steinberg & Richard E. Plank, *Journal of the Academy of Marketing Science*, Vol. 15, No. 2 ("the Steinberg Reference") (Exhibit M) (D000767–774).

14. Sales Force Automation: Using the Latest Technology to Make Your Sales Force More Competitive, 1994, George W. Colombo, McGraw-Hill, Inc. ("the Colombo Reference") (Exhibit N) (D000775–836).

15. SAMS Strategic Account Management System, 1995, Howard Kleinert & Raj Rao, IAAI-95 Proceedings, AAAI ("the SAMS Reference") (Exhibit O) (D000837–849).

16. Omaha Steaks System, (by 1993) (Exhibit P-1 *et seq.*).[1]  Omaha Steaks customer and buyer sales system and database have been in place since 1988 with additional functionalities implemented by 1993 (*see* Attachment P for details).  At

---

[1] Please note that Exhibit P-1 *et seq.* contains confidential information designated Highly Confidential Attorneys' Eyes only.

least the following individual has knowledge regarding use of the Omaha Steaks customer buyer sales system and database by 1993: Jeffrey Carter.

17. Northern Tool's MOMS System (by 1993). The MOMS system is a software system and method used in call centers of Northern Tool & Equipment and its predecessor entity in order to facilitate catalog sales. The MOMS system was operational as early as 1984. The MOMS system was used by call center operators in order to enter orders from customers and among other things recognized the change of state characteristic of events and associated context prompting customers if they had interest in purchasing additional items in addition to those requested. Those most knowledgeable about the MOMS system and method are Brad Peterson of Northern Tool & Equipment and call center managers and operators using MOMS in the 1984 to 1995 timeframe.

Defendants further identify all prior art disclosed as anticipating and/or rendering obvious the claims of the '525 Patent in invalidity contentions from prior lawsuits concerning the '525 Patent, including the invalidity contentions in *SFA Systems, L. L. C. f/k/a Triton IP, L.L.C. v. Infor Global Solutions (Michigan), Inc., et al.*, C.A. No. 6:07-cv-067, Eastern District of Texas, which are attached as Addendum 1. Pursuant to P.R. 3-3 (a) & (b), Defendants identify the Infor Prior Art References (Exhibit 1) as:

1. U.S. Pat. No. 4,853,852, issued August 1, 1989 (D000850–858);

2. U.S. Pat. No. 4,931,932, issued June 5, 1990 (D001424–1430);

3. U.S. Pat. No. 5,117,354, issued May 26, 1992 (D001409–1423);

4. U.S. Pat. No. 5,168,445, issued Dec. 1, 1992 (D001386–1408);

5. U.S. Pat. No. 5,191,522, issued Mar. 2, 1993 (D001355–1385);

6.  U.S. Pat. No. 5,201,010, issued Apr. 6, 1993 (D001270–1354);

7.  U.S. Pat. No. 5,216,592, issued June 1, 1993 (D001260–1269);

8.  U.S. Pat. No. 5,283,856, issued February 1, 1994 (D001230–1259);

9.  U.S. Pat. No. 5,283,865, issued Feb. 1, 1994 (D001138–1229);

10. U.S. Pat. No. 5,309,355, issued May 3, 1994 (D001123–1137);

11. U.S. Pat. No. 5,349,662, issued Sept. 20, 1994 (D001109–1122);

12. U.S. Pat. No. 5,367,627, issued Nov. 22, 1994 (D001017–1108);

13. U.S. Pat. No. 5,446,653, issued Aug. 29, 1995, filed June 22, 1994 (D001000–1016);

14. U.S. Pat. No. 5,450,314, issued September 12, 1995, filed March 18, 1992 (D000975–999);

15. U.S. Pat. No. 5,630,127, issued May 13, 1997, filed June 7, 1995 (D000942–974);

16. U.S. Pat. No. 5,657,233, issued Aug. 12, 1997, filed January 12, 1995 (D000912–941);

17. U.S. Pat. No. 5,717,595, issued Feb. 10, 1998, filed June 5, 1995 (D000880–911);

18. U.S. Pat. No. 6,023,683, issued Feb. 8, 2000, filed August 10, 1994 (D000859–879);

19. U.S. Pat. No. 6,061,506, issued May 9, 2000, filed August 29, 1995 (D001431–1478);

20. Casanova, et al., "Expert System for Automatic Authorization of Deficits." IEEE, 1989 (D001479–1483);

21. Harrison, H.C. & Qizhong, Gong: "An Intelligent Business Forecasting System," Association of Computer Machinery 089791-558-5, 1993 (D001484–1491); and

22. Stone, Robert W. & Good, David J.: "Expert Systems and Sales Strategies," Association of Computer Machinery 089791-416-3, 1990 (D001492–1497).

Defendants also note that the prosecution history of the patent-in-suit indicates that software potentially embodying the claimed invention was sold prior to the critical date of the '525 Patent. References concerning such sales are listed in an IDS within the prosecution history of the '525 Patent, but the references themselves were not disclosed by Plaintiff in their P.R. 3-2 disclosures. Defendants reserve the right to take discovery regarding these prior art sales, and if warranted, assert invalidity of the '525 Patent under 35 U.S.C. § 102(b) for a prior art sale and/or public use.

Defendants subpoenaed Infor Global for prior art asserted in the prior action between SFA (formerly known as Triton) and Infor Global. References disclosed during that action were not produced by Plaintiff in its P.R. 3-2 disclosures. Defendants reserve the right to amend these Invalidity Contentions based on the prior art disclosed during that litigation once such prior art is received and reviewed.

Defendants also subpoenaed discovery from Oracle Corporation regarding prior art systems for sale and/or in public use prior to the '525 Patent, including discovery regarding Siebel Systems, Inc. and Scopus Technology. Defendants have not yet received such discovery and reserve the right to supplement these Invalidity Contentions upon receipt of that information.

In addition, pursuant to P.R. 3-3(a) and (b), Defendants identify the following item of prior art that render the claims of the '525 Patent obvious under 35 U.S.C. § 103 over other references as disclosed below:

1.  An Approach to Reducing Delays in Recognizing Distributed Event Occurrences, Madalene Spezialetti, *Association for Computing Machinery*, 1991 (Exhibit Q) (D000850–861).

Further, each anticipatory prior art reference, either alone or in combination with other prior art, renders the asserted claims obvious to one of ordinary skill in the art.  In particular, each anticipatory prior art reference on its own renders obvious the claimed inventions, and also may be combined with (i) information known to persons skilled in the art at the time of the alleged invention, and/or (ii) any of the other anticipatory prior art references.  To the extent that SFA contends that any of the anticipatory prior art fails to disclose explicitly or inherently one or more limitations of the asserted claims, Defendants reserve the right to argue that any difference between the reference and the corresponding patent claims would have been obvious to one of ordinary skill in the art even if it has not specifically denoted that the reference is to be combined with the knowledge of a person of ordinary skill in the art.  Further, Defendants reserve the right to identify other prior art references that, when combined with anticipatory prior art, would render the claims obvious.

The United States Supreme Court clarified the standard for what types of inventions are patentable.  *See KSR Int'l Co. v. Teleflex, Inc.*, 550 U.S. 398, 127 S. Ct. 1727 (2007).  In particular, the Supreme Court emphasized that inventions arising from ordinary innovation, ordinary skill or common sense should not be patentable.  *Id*. at 1732, 1738–1739, 1742–1743, 1746.  Restated, "the combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results."  *Id*. at 1731.  Because the '525 Patent simply combines elements well known in the art (and disclosed in the charted references) in a straightforward fashion to achieve a well-known and obvious result and thus yield no more

than one skilled in the art would expect from such combinations, the claims of the '525 Patent are obvious. The asserted claims are therefore invalid under 35 U.S.C. § 103 because they do nothing more than combine known techniques and apparatuses according to their known and ordinary uses to yield predictable results.

### **Motivation to Combine**

To the extent that applicable law requires evidence of motivation to combine, motivation exists to combine one or more of the references included in these Invalidity Contentions with each other. Generally, motivation to combine any of these references with others exists within the references themselves, as well as within the knowledge of those of ordinary skill in the art at the relevant time. For example, many of these references identify and address the same technical issues and suggest very similar solutions to those issues in the field of computer implemented systems and particularly automated computer sales systems. If and to the extent that SFA challenges the correspondence of any of these references with respect to particular elements of the asserted claims of the patent-in-suit, Defendants reserve the right to supplement these Invalidity Contentions to identify additional motivations to combine particular references with one another.

Defendants may rely upon a subset of the references or all of the references depending upon the Court's claim construction and further investigation. Defendants' contentions that the references in this section, in various combinations, render the asserted claims of the patent-in-suit obvious under 35 U.S.C. § 103 are in no way an admission or suggestion that each reference does not independently anticipate the asserted claims under 35 U.S.C. § 102. Any of the references disclosed herein may be combined with other references disclosed herein to render obvious, and therefore invalid, each of the asserted claims of the patent-in-suit. In particular, the

asserted claims of the patent-in-suit are rendered obvious under 35 U.S.C. § 103 in view of at least, and without limitation, the following combinations of references and reasons to combine:

### 1. *Exhibit A ('359 Patent) combined with Exhibit I ('868 Patent)*

One of ordinary skill in the art would have had a reason to combine the '359 Patent with the '868 Patent, at least because these references both relate to automated sales systems. The '359 Patent is directed to, for example, a "system for automatically dispensing information, goods and services to a customer on a self-service basis including a central data processing center in which information on services offered by various institutions in a particular industry is stored." '359 Patent at abstract. In the same field of endeavor, the '868 Patent, like the '359 Patent, discloses an "automated sales promotion selection system" that "identif[ies] promising sales promotions based on recent customer purchases," and "includes a customer information device that receives customer data relating to customer purchases of items from an inventory of items." '868 Patent at abstract.

Although Defendants contend that the '359 Patent anticipates all asserted claims under 35 U.S.C. § 102, to the extent the '359 Patent is found not to disclose all limitations of the asserted claims, it would have been obvious to one of ordinary skill to combine the '359 Patent and the '868 Patent because they teach the use of known elements and methods. For example, if the '359 Patent is found not to disclose facilitating a new action based on the inferred context, modifying the sales and information terminal or central data processing center of the '359 Patent to do the same as disclosed in the '868 Patent at 2:56–59, 5:56–61, 10:53–56, 18:21–29 would yield predictable results. As another example, if the '359 Patent is found not to disclose memory for storing rules that indicate subsequent actions to be taken upon occurrence of an event and a decision subsystem that identifies such stored rules and initiates operations based on the same, it would have been obvious to one of ordinary skill to combine the '359 Patent and the '868 Patent

because modifying the sales and information terminal or central data processing center of the '359 Patent to include the same as disclosed in the '868 Patent at 8:1–7, 9:22–65, 10:19–31, 11:60–67, 14:48–55, 18:49–60 would yield predictable results.

### 2. Exhibit A ('359 Patent) combined with Exhibit O (SAMS)

One of ordinary skill in the art would have had a reason to combine the '359 Patent with the SAMS Reference, at least because these references both relate to automated sales systems. The '359 Patent is directed to, for example, a "system for automatically dispensing information, goods and services to a customer on a self-service basis including a central data processing center in which information on services offered by various institutions in a particular industry is stored." '359 Patent at abstract. In the same field of endeavor, the SAMS Reference, like the '359 Patent, discloses an expert system to provide account management and sales support such as recommending sales strategies and generating letters.

Although Defendants contend that the '359 Patent anticipates all asserted claims under 35 U.S.C. § 102, to the extent the '359 Patent is found not to disclose all limitations of the asserted claims, it would have been obvious to one of ordinary skill to combine the '359 Patent and the SAMS Reference because they teach the use of known elements and methods. For example, if the '359 Patent is found not to disclose facilitating a new action based on the inferred context, modifying the sales and information terminal or central data processing center of the '359 Patent to do the same as disclosed in the SAMS Reference at p. 78, col. 2. would yield predictable results. As another example, if the '359 Patent is found not to disclose memory for storing rules that indicate subsequent actions to be taken upon occurrence of an event and a decision subsystem that identifies such stored rules and initiates operations based on the same, it would have been obvious to one of ordinary skill to combine the '359 Patent and the SAMS Reference because modifying the sales and information terminal or central data processing center of the

'359 Patent to include the same as disclosed in the SAMS Reference at pp. 85-86 would yield predictable results.

### 3.  *Exhibit C ('028 Patent) combined with Exhibit I ('868 Patent)*

One of ordinary skill in the art would have had a reason to combine the '028 Patent with the '868 Patent, at least because these references both relate to automated sales systems.  The '028 Patent is directed to, for example, an "automated order and payment system for use by consumers to rapidly order products and services from any location at which the consumer is present at the time of ordering."  '028 Patent at abstract.  In the same field of endeavor, the '868 Patent, like the '028 Patent, discloses an "automated sales promotion selection system" that "identif[ies] promising sales promotions based on recent customer purchases," and "includes a customer information device that receives customer data relating to customer purchases of items from an inventory of items."  '868 Patent at abstract.

Although Defendants contend that the '028 Patent anticipates all asserted claims under 35 U.S.C. § 102, to the extent the '028 Patent is found not to disclose all limitations of the asserted claims, it would have been obvious to one of ordinary skill to combine the '028 Patent and the '868 Patent because they teach the use of known elements and methods.  For example, if the '028 Patent is found not to disclose detecting changes in state characteristic of an event and inferring the occurrence of the event, modifying the central computer system (CCS) of the '028 Patent to do the same as disclosed in the '868 Patent at Figs. 2 & 10, 2:42–66, 9:9–35, 11:36– 12:13, 12:30–34, 18:21–29, 19:3–43, 19:60–67, 20:6–21:2 would yield predictable results.

### 4.  *Exhibit C ('028 Patent) combined with Exhibit O (SAMS)*

One of ordinary skill in the art would have had a reason to combine the '028 Patent with the SAMS Reference, at least because these references both relate to automated sales systems. The '028 Patent is directed to, for example, an "automated order and payment system for use by

consumers to rapidly order products and services from any location at which the consumer is present at the time of ordering." '028 Patent at abstract.  In the same field of endeavor, the SAMS Reference, like the '028 Patent, discloses an expert system to provide account management and sales support such as recommending sales strategies and generating letters.

Although Defendants contend that the '028 Patent anticipates all asserted claims under 35 U.S.C. § 102, to the extent the '028 Patent is found not to disclose all limitations of the asserted claims, it would have been obvious to one of ordinary skill to combine the '028 Patent and the SAMS Reference because they teach the use of known elements and methods.  For example, if the '028 Patent is found not to disclose detecting changes in state characteristic of an event and inferring the occurrence of the event, modifying the central computer system (CCS) of the '028 Patent to do the same as disclosed in the SAMS reference at pp. 80, 85 would yield predictable results.

### 5.  *Exhibit E ('031 Patent) combined with Exhibit I ('868 Patent)*

One of ordinary skill in the art would have had a reason to combine the '031 Patent with the '868 Patent, at least because these references both relate to automated sales systems.  The '031 Patent is directed to, for example, a video communication trading system which is utilized for buying and selling currencies.  '031 Patent at abstract, 9:15–46.  In the same field of endeavor, the '868 Patent, like the '031 Patent, discloses an "automated sales promotion selection system" that "identif[ies] promising sales promotions based on recent customer purchases," and "includes a customer information device that receives customer data relating to customer purchases of items from an inventory of items." '868 Patent at abstract.

Although Defendants contend that the '031 Patent anticipates all asserted claims under 35 U.S.C. § 102, to the extent the '031 Patent is found not to disclose all limitations of the asserted claims, it would have been obvious to one of ordinary skill to combine the '031 Patent and the

'868 Patent because they teach the use of known elements and methods.  For example, if the '031 Patent is found not to disclose linking the inferred event with an action based on prior sales experience, modifying the system of the '031 Patent to do the same as disclosed in the '868 Patent at Fig. 14, 2:56–59, 8:29–35, col. 13, 14:20–22, 17:33–35, col. 19, 20:61–21:2 would yield predictable results.

### 6. *Exhibit E ('031 Patent) combined with Exhibit O (SAMS)*

One of ordinary skill in the art would have had a reason to combine the '031 Patent with the SAMS Reference, at least because these references both relate to automated sales systems.  The '031 Patent is directed to, for example, a video communication trading system which is utilized for buying and selling currencies.  '031 Patent at abstract, 9:15–46.  In the same field of endeavor, the SAMS Reference, like the '031 Patent, discloses an expert system to provide account management and sales support such as recommending sales strategies and generating letters.

Although Defendants contend that the '031 Patent anticipates all asserted claims under 35 U.S.C. § 102, to the extent the '031 Patent is found not to disclose all limitations of the asserted claims, it would have been obvious to one of ordinary skill to combine the '031 Patent and the SAMS Reference because they teach the use of known elements and methods.  For example, if the '031 Patent is found not to disclose linking the inferred event with an action based on prior sales experience, modifying the system of the '031 Patent to do the same as disclosed in the SAMS Reference at p. 85 would yield predictable results.

### 7. *Exhibit F ('632 Patent) combined with Exhibit I ('868 Patent)*

One of ordinary skill in the art would have had a reason to combine the '632 Patent with the '868 Patent, at least because these references both relate to automated sales systems.  The '632 Patent is directed to, for example, an "interactive computer system network" that "enables a

user to . . . perform desired transactional services, such as banking and shopping" and "monitor[s user characteristics] . . . in order to generate and display specific advertisements to the user based on individual usage characteristics and predetermined interests." '632 Patent at abstract.  In the same field of endeavor, the '868 Patent, like the '632 Patent, discloses an "automated sales promotion selection system" that "identif[ies] promising sales promotions based on recent customer purchases," and "includes a customer information device that receives customer data relating to customer purchases of items from an inventory of items." '868 Patent at abstract.

Although Defendants contend that the '632 Patent anticipates all asserted claims under 35 U.S.C. § 102, to the extent the '632 Patent is found not to disclose all limitations of the asserted claims, it would have been obvious to one of ordinary skill to combine the '632 Patent and the '868 Patent because they teach the use of known elements and methods.  For example, if the '632 Patent is found not to disclose automatically initiating an operation using a subsystem, modifying the system of the '632 Patent to do the same as disclosed in the '868 Patent at 2:54–59, 4:43–48, 10:37–41, 17:64–67, 18:21–29, col. 19, 20:61–21:2 would yield predictable results.

### 8.  *Exhibit G ('291 Patent) combined with Exhibit I ('868 Patent)*

One of ordinary skill in the art would have had a reason to combine the '291 Patent with the '868 Patent, at least because these references both relate to automated sales systems.  The '291 Patent is directed to, for example, a "system and method for generating estimates and orders for the manufacture of custom items" for "access by sales representatives at remote sales sites," in which a "sales representative creates an item specification for a form to be manufactured and electronically transmits it to the corporate office for estimate data[; d]ata relating to the cost and list price to produce the form based on the item specification is transmitted to the sales representative[; and t]he sales representative determines a sell price from the pricing data, and generates a production order using the item specification and the estimate data, among other

14

data." '291 Patent at abstract.  In the same field of endeavor, the '868 Patent, like the Steinberg Reference, discloses an "automated sales promotion selection system" that "identif[ies] promising sales promotions based on recent customer purchases," and "includes a customer information device that receives customer data relating to customer purchases of items from an inventory of items." '868 Patent at abstract.

Although Defendants contend that the '291 Patent anticipates all asserted claims under 35 U.S.C. § 102, to the extent the '291 Patent is found not to disclose all limitations of the asserted claims, it would have been obvious to one of ordinary skill to combine the '291 Patent and the '868 Patent because they teach the use of known elements and methods. For example, if the '291 Patent is found not to disclose an event manager, modifying the system of the '291 Patent to do the same as disclosed in the '868 Patent at fig. 2 & 10, 2:28–56, cols. 4–5, 9:9–35, 11:36–12:34, 13:17–19, 14:25–26, 18:21–29, col. 19, 20:10–21:2, would yield predictable results.  As another example, if the '291 Patent is found not to disclose linking an inferred event with an action, it would have been obvious to one of ordinary skill to combine the '291 Patent and the '868 Patent because modifying the system of the Steinberg Reference to do the same as disclosed in the '868 Patent at fig. 14, 2:56–59, 8:29–35, col. 13, 14:20–22, 17:33–35, col. 19, 20:61–21:2 would yield predictable results.

### 9.  *Exhibit G ('291 Patent) combined with Exhibit O (SAMS)*

One of ordinary skill in the art would have had a reason to combine the '291 Patent with the SAMS Reference, at least because these references both relate to automated sales systems. The '291 Patent is directed to, for example, a "system and method for generating estimates and orders for the manufacture of custom items" for "access by sales representatives at remote sales sites," in which a "sales representative creates an item specification for a form to be manufactured and electronically transmits it to the corporate office for estimate data[; d]ata

relating to the cost and list price to produce the form based on the item specification is transmitted to the sales representative[; and t]he sales representative determines a sell price from the pricing data, and generates a production order using the item specification and the estimate data, among other data." '291 Patent at abstract.  In the same field of endeavor, the SAMS Reference, like the '291 Patent, discloses an expert system to provide account management and sales support such as recommending sales strategies and generating letters.

Although Defendants contend that the '291 Patent anticipates all asserted claims under 35 U.S.C. § 102, to the extent the '291 Patent is found not to disclose all limitations of the asserted claims, it would have been obvious to one of ordinary skill to combine the '291 Patent and the SAMS Reference because they teach the use of known elements and methods.  For example, if the '291 Patent is found not to disclose an event manager, modifying the system of the '291 Patent to do the same as disclosed in the SAMS Reference at pp. 80, 85 would yield predictable results.  As another example, if the '291 Patent is found not to disclose linking an inferred event with an action, it would have been obvious to one of ordinary skill to combine the '291 Patent and the SAMS Reference because modifying the system of the '291 Patent to do the same as disclosed in the SAMS Reference at p. 85 would yield predictable results.

### 10. *Exhibit M (Steinberg) combined with Exhibit I ('868 Patent)*

One of ordinary skill in the art would have had a reason to combine the Steinberg Reference with the '868 Patent, at least because these references both relate to automated sales systems.  The Steinberg Reference is directed to, for example, "the concept of developing an expert system to integrate the sales management function within a useful computer-based decision support system," and "demonstrate[s] how this kind of software will greatly enhance the productivity of the sales function."  Steinberg Reference at p.55.  In the same field of endeavor, the '868 Patent, like the Steinberg Reference, discloses an "automated sales promotion selection

system" that "identif[ies] promising sales promotions based on recent customer purchases," and "includes a customer information device that receives customer data relating to customer purchases of items from an inventory of items." '868 Patent at abstract.

Although Defendants contend that the Steinberg Reference anticipates all asserted claims under 35 U.S.C. § 102, to the extent the Steinberg Reference is found not to disclose all limitations of the asserted claims, it would have been obvious to one of ordinary skill to combine the Steinberg Reference and the '868 Patent because they teach the use of known elements and methods.   For example, if the Steinberg Reference is found not to disclose an event manager, modifying the system of the Steinberg Reference to do the same as disclosed in the '868 Patent at fig. 2 & 10, 2:28–56, cols. 4–5, 9:9–35, 11:36–12:34, 13:17–19, 14:25–26, 18:21–29, col. 19, 20:10–21:2, would yield predictable results.  As another example, if the Steinberg Reference is found not to disclose an inferred context that includes information related to whether a previous event has occurred, it would have been obvious to one of ordinary skill to combine the Steinberg Reference and the '868 Patent because modifying the system of the Steinberg Reference to do the same as disclosed in the '868 Patent at 5:6–45, 9:22–35, 13:17–19, 14:25–26, 19:13–63, 20:61–21:2 would yield predictable results.  As another example, if the Steinberg Reference is found not to disclose a decision subsystem that identifies rules stored in a memory corresponding to an inferred context and that initiates an operation, it would have been obvious to one of ordinary skill to combine the Steinberg Reference and the '868 Patent because modifying the system of the Steinberg Reference to do the same as disclosed in the '868 Patent at 9:22–35, 10:19–31, 11:60–67 would yield predictable results.  As another example, if the Steinberg Reference is found not to disclose linking an inferred event with an action, it would have been obvious to one of ordinary skill to combine the Steinberg Reference and the '868 Patent because

modifying the system of the Steinberg Reference to do the same as disclosed in the '868 Patent at fig. 14, 2:56–59, 8:29–35, col. 13, 14:20–22, 17:33–35, col. 19, 20:61–21:2 would yield predictable results.

### 11. *Exhibit M (Steinberg) combined with Exhibit O (SAMS)*

One of ordinary skill in the art would have had a reason to combine the Steinberg Reference with the SAMS Reference, at least because these references both relate to automated sales systems. The Steinberg Reference is directed to, for example, "the concept of developing an expert system to integrate the sales management function within a useful computer-based decision support system," and "demonstrate[s] how this kind of software will greatly enhance the productivity of the sales function." Steinberg Reference at p.55. In the same field of endeavor, the SAMS Reference, like the Steinberg Reference, discloses an expert system to provide account management and sales support such as recommending sales strategies and generating letters.

Although Defendants contend that the Steinberg Reference anticipates all asserted claims under 35 U.S.C. § 102, to the extent the Steinberg Reference is found not to disclose all limitations of the asserted claims, it would have been obvious to one of ordinary skill to combine the Steinberg Reference and the SAMS Reference because they teach the use of known elements and methods. For example, if the Steinberg Reference is found not to disclose an event manager, modifying the system of the Steinberg Reference to do the same as disclosed in the SAMS Reference at pp. 80, 85 would yield predictable results. As another example, if the Steinberg Reference is found not to disclose an inferred context that includes information related to whether a previous event has occurred, it would have been obvious to one of ordinary skill to combine the Steinberg Reference and the SAMS Reference because modifying the system of the Steinberg Reference to do the same as disclosed in the SAMS Reference at 85 would yield

predictable results.  As another example, if the Steinberg Reference is found not to disclose a decision subsystem that identifies rules stored in a memory corresponding to an inferred context and that initiates an operation, it would have been obvious to one of ordinary skill to combine the Steinberg Reference and the SAMS Reference because modifying the system of the Steinberg Reference to do the same as disclosed in the SAMS Reference at p. 86 would yield predictable results.  As another example, if the Steinberg Reference is found not to disclose linking an inferred event with an action, it would have been obvious to one of ordinary skill to combine the Steinberg Reference and the SAMS Reference because modifying the system of the Steinberg Reference to do the same as disclosed in the SAMS Reference at p. 85 would yield predictable results.

### 12. *Exhibit O (SAMS) combined with Exhibit I ('868 Patent)*

One of ordinary skill in the art would have had a reason to combine the SAMS Reference with the '868 Patent, at least because these references both relate to automated sales systems. The SAMS Reference is directed to, for example, an expert system that provides account management and sales support such as recommending sales strategies and generating letters.  In the same field of endeavor, the '868 Patent, like the SAMS Reference, discloses an "automated sales promotion selection system" that "identif[ies] promising sales promotions based on recent customer purchases," and "includes a customer information device that receives customer data relating to customer purchases of items from an inventory of items."  '868 Patent at abstract.

Although Defendants contend that the SAMS Reference anticipates all asserted claims under 35 U.S.C. § 102, to the extent the SAMS Reference is found not to disclose all limitations of the asserted claims, it would have been obvious to one of ordinary skill to combine the SAMS Reference and the '868 Patent because they teach the use of known elements and methods.  For example, if the SAMS Reference is found not to disclose automatically initiating an operation

using a subsystem, modifying the system of the SAMS Reference to do the same as disclosed in the '868 Patent at 2:54–59, 4:43–48, 10:37–41, 17:64–67, 18:21–29, col. 19, 20:61–21:2, would yield predictable results.

### 13. *Exhibit M (Steinberg) combined with Exhibit I ('868 Patent) and in further view of Exhibit Q (Spezialetti)*

One of ordinary skill in the art would have had a reason to combine the Steinberg Reference with the '868 Patent, at least because these references both relate to automated sales systems.  One of ordinary skill in the art would have further had a reason to combine those references with Spezialetti because all three references relate to integrating computer systems to increase efficiency. The Steinberg Reference is directed to, for example, "the concept of developing an expert system to integrate the sales management function within a useful computer-based decision support system," and "demonstrate[s] how this kind of software will greatly enhance the productivity of the sales function."  Steinberg Reference at p.55.  In the same field of endeavor, the '868 Patent, like the Steinberg Reference, discloses an "automated sales promotion selection system" that "identif[ies] promising sales promotions based on recent customer purchases," and "includes a customer information device that receives customer data relating to customer purchases of items from an inventory of items."  '868 Patent at abstract. The Spezialetti Reference discloses an approach to "reducing delays in event recognition." Spezialetti Reference at 155.

Although Defendants contend that the Steinberg Reference anticipates all asserted claims under 35 U.S.C. § 102, to the extent the Steinberg Reference is found not to disclose all limitations of the asserted claims, it would have been obvious to one of ordinary skill to combine the Steinberg Reference, the '868 Patent, and the Spezialetti Reference because they teach the use of known elements and methods. For example, if the Steinberg Reference is found not to

disclose an event manager, modifying the system of the Steinberg Reference to do the same as disclosed in the '868 Patent at fig. 2 & 10, 2:28–56, cols. 4–5, 9:9–35, 11:36–12:34, 13:17–19, 14:25–26, 18:21–29, col. 19, 20:10–21:2 or in the Spezialetti Reference at 155–157, 162, & 165 would yield predictable results.  As another example, if the Steinberg Reference is found not to disclose an inferred context that includes information related to whether a previous event has occurred, it would have been obvious to one of ordinary skill to combine the Steinberg Reference and the '868 Patent because modifying the system of the Steinberg Reference to do the same as disclosed in the '868 Patent at 5:6–45, 9:22–35, 13:17–19, 14:25–26, 19:13–63, 20:61–21:2 would yield predictable results.  As another example, if the Steinberg Reference is found not to disclose a decision subsystem that identifies rules stored in a memory corresponding to an inferred context and that initiates an operation, it would have been obvious to one of ordinary skill to combine the Steinberg Reference and the '868 Patent because modifying the system of the Steinberg Reference to do the same as disclosed in the '868 Patent at 9:22–35, 10:19–31, 11:60–67 would yield predictable results.  As another example, if the Steinberg Reference is found not to disclose linking an inferred event with an action, it would have been obvious to one of ordinary skill to combine the Steinberg Reference and the '868 Patent because modifying the system of the Steinberg Reference to do the same as disclosed in the '868 Patent at fig. 14, 2:56–59, 8:29–35, col. 13, 14:20–22, 17:33–35, col. 19, 20:61–21:2 would yield predictable results.

14. *Any of Exhibits A–P combined with Exhibit Q (Spezialetti)*

One of ordinary skill in the art would have had a reason to combine any of Exhibits A–P with Spezialetti because they relate to integrating computer systems to increase efficiency and automated sales.  The Spezialetti Reference discloses an approach to "reducing delays in event recognition."  Spezialetti Reference at 155.

Although Defendants contend that each of Exhibits A–P by themselves each anticipates all asserted claims under 35 U.S.C. § 102, to the extent any of them are found not to disclose an event manager or the steps performed by the event manager, as claimed in the asserted claims, it would have been obvious to one of ordinary skill to combine any of them and the Spezialetti Reference because they teach the use of known elements and methods.  That is, to the extent any of Exhibits A–P are found not to disclose an event manager, modifying the system of each of the Exhibits A–P to do the same as disclosed in the Spezialetti Reference at 155–157, 162, 165, would yield predictable results.

### 15. *Exhibits B, D, H, K, or L (Group A) with any one of Exhibits A, C, E–G, I, J, or M–O (Group B)*

One of ordinary skill in the art would have had a reason to combine any of the disclosures in Group A (Exhibits B, D, H, K, and L) with any of the disclosures in Group B (Exhibits A, C, E-G, I, J, and M–O) because all these references relate to integrating computer systems to improve efficiency.  One of ordinary skill in the art addressing the problem of how to design a computer-implemented sales system would have researched both computer systems and sales methods.

Although Defendants contend that each of the Group A references anticipates all asserted claims under 35 U.S.C. § 102, to the extent a Group A reference is found not to disclose all limitations of the asserted claims, it would have been obvious to one of ordinary skill to combine that reference with any of the Group B reference because they teach the use of known elements and methods.  For example, if the '044 Patent (Exhibit B) is found not to disclose an inferred context that "includes information related to at least one phase of the sales process", it would have been obvious to one of ordinary skill in the art to modify the system of the '044 Patent with any of the disclosures of Group B, *see, e.g.*, the '359 Patent (Exhibit A) at 2:38–44 & 2:48–55;

the '028 Patent (Exhibit C) at 6:37–45; the '031 Patent (Exhibit E) at Abstract, 7:57-65, &  9:15–46; the'632 Patent (Exhibit F) at 9:30–47, 73:52–64, 81:11–22, 81:52–62, 91:14–25, & 93:28–43; the '291 Patent (Exhibit G) at 8:18–24, 12:55–60, 14:37–67, 15:4–8, & 15:65–16:5; the '868 Patent (Exhibit I) at 5:6–10, 5:40–45, 9:22–35, 13:17–19, 14:25–26, 19:13–43, 19:60–63, & 20:61– 21:2; the '908 Patent (Exhibit J) at 27:51–61, 28:48–67, 48:63–49:31, 49:18–22, 28:38–46, & 53:29–54:35; the Steinberg Reference (Exhibit M) at 58–60; the Colombo Reference at 42 & 195; and the SAMS Reference at 77, because such modification would yield predictable results.  The same is true for modifications of the disclosures of Exhibits D, H, K, or L with any of the disclosures of Group B, *see, e.g.*, the '359 Patent (Exhibit A) at 2:38–44 & 2:48–55; the '028 Patent (Exhibit C) at 6:37–45; the '031 Patent (Exhibit E) at Abstract, 7:57-65, &  9:15-46; the'632 Patent (Exhibit F) at 9:30–47, 73:52–64, 81:11–22, 81:52–62, 91:14–25, & 93:28–43; the '291 Patent (Exhibit G) at 8:18–24, 12:55–60, 14:37–67, 15:4–8, & 15:65–16:5; the '868 Patent (Exhibit I) at 5:6–10, 5:40–45, 9:22–35, 13:17–19, 14:25–26, 19:13–43, 19:60–63, & 20:61– 21:2; the '908 Patent (Exhibit J) at 27:51–61, 28:48–67, 48:63–49:31, 49:18–22, 28:38–46, & 53:29–54:35; the Steinberg Reference (Exhibit M) at 58–60; the Colombo Reference at 42 & 195; and the SAMS Reference at 77, because such modification would yield predictable results.

## II.    P.R. 3-3(c): Prior Art Charts

Pursuant to P.R. 3-3(c), Defendants attach claim charts each showing how each reference listed above teaches the limitations of the asserted claims of the '525 Patent.  Defendants' claim charts are subject to revision and amendment pursuant to Federal Rule of Civil Procedure 26(e) and P.R. 3-6 following discovery or the Court's construction of the claims at issue.  To the extent that the following contentions reflect constructions of claim limitations consistent with or

implicit in Plaintiff's infringement contentions, no inference is intended nor should any be drawn that Defendants agree with Plaintiff's claim constructions. Defendants expressly reserve the right to contest such claim constructions. Defendants offer such contentions solely in the alternative to any position they may ultimately take as to claim construction and non-infringement issues.

Each attached claim chart corresponds to the prior art reference identified above as follows:

Attachment A: U.S. Patent No. 4,567,359

Attachment B: U.S. Patent No. 4,648,044

Attachment C: U.S. Patent No. 4,947,028

Attachment D: U.S. Patent No. 5,103,498

Attachment E: U.S. Patent No. 5,195,031

Attachment F: U.S. Patent No. 5,347,632

Attachment G: U.S. Patent No. 5,570,291

Attachment H: U.S. Patent No. 5,660,176

Attachment I: U.S. Patent No. 5,774,868

Attachment J: U.S. Patent No. 5,999,908

Attachment K: U.S. Patent No. 6,005,531

Attachment L: Artificial Intelligence and Expert Systems in Accounting Databases: Survey and Extensions

Attachment M: Expert Systems: The Integrative Sales Management Tool of the Future

Attachment N: Sales Force Automation: Using the Latest Technology to Make Your Sales Force More Competitive

Attachment O: SAMS Strategic Account Management System

Attachment P: Omaha Steaks System[2]

Attachment Q: An Approach to Reducing Delays in Recognizing Distributed Event Occurrences (Spezialetti)

Attachment R: Northern Tools MOMS System[3]

Defendants contend the following limitation of the asserted claims of the '525 Patent is governed by 35 U.S.C. § 112 ¶ 6: "event manager." The identities of the structure(s), act(s), or material(s) in each item of prior art that performs the claimed function is identified in the Attachments.

In addition, claims charts corresponding to the Infor Prior Art References are attached as Addendum 1. Defendants have also attached Appendix 1, which provides supplemental claim charts for the dependent claims not asserted in the prior litigation for the Infor Prior Art References.

## III.    P.R. 3-3(d): Indefiniteness

Pursuant to Patent Rule 3-3(d), Defendants contend that each asserted claim of the '525 Patent is invalid under 35 U.S.C. § 112 as indefinite for inclusion of one or more of the following claim terms:

- "decision subsystem";

- "changes in state characteristic of an event";

- "inferring occurrence of the event and a context in which the event occurred"/ "infer occurrence of the event and a context in which the event occurred"; and

_____

[2] Please note that Attachment P contains confidential information designated Highly Confidential Attorneys' Eyes only.
[3] Please note that Attachment R contains confidential information designated Highly Confidential Attorneys' Eyes only.

- "automatically initiating an operation in one or more particular subsystems of the computer"/ "automatically detecting one or more changes in state characteristic of an event occurring in the sales process"/ "automatically initiate an operation using one or more of the plurality of subsystems."

## A. "decision subsystem"

The claim term "decision subsystem" is indefinite because the '525 Patent fails to provide an objective standard for determining its scope and therefore is insolubly ambiguous. There is nothing in the specification that provides insight as to whether a subsystem is a "decision subsystem" or not. In fact, "decision subsystem" only appears in the claims—there is no reference to a "decision subsystem" in the specification.

## B. "changes in state characteristic of an event"

The claim phrase "changes in state characteristic of an event" is indefinite because the specification fails to provide an objective standard for evaluating whether a change in state is *characteristic* of an event. The phrase "changes in state characteristic of an event" did not appear in the original claims and was not used in the specification.

## C. "inferring occurrence of the event and a context in which the event occurred"/"infer occurrence of the event and a context in which the event occurred"

The claim elements "inferring occurrence of the event and a context in which the event occurred" and "infer occurrence of the event and a context in which the event occurred" are indefinite because it is impossible to determine the construction of each of the three parts of the element ("inferring", "inferring occurrence of the event", and "inferring . . . a context in which the event occurred"). One of ordinary skill in the art could not determine the meaning of these terms from the claims and specification. This "inferring" clause was not part of the originally filed patent application, and is not disclosed, supported, or described in the specification.

### D.   "automatically"

The claim elements "automatically initiating an operation in one or more particular subsystems of the computer," "automatically detecting one or more changes in state characteristic of an event occurring in the sales process" and "automatically initiate an operation using one or more of the plurality of subsystems" are indefinite because it is impossible to determine the construction of the term "automatically."  One of ordinary skill in the art could not determine the meaning of this term from the claims and specification because the level of user intervention  prior to the computer "automatically" initiating an operation or detecting a change in state is unclear.

## IV.   P.R. 3-3(d): Lack of Enablement, and Lack of Written Description

Pursuant to Patent Rule 3-3(d), Defendants contend that each asserted claim of the '525 Patent is invalid under 35 U.S.C. § 112 ¶ 1 because the specification does not enable and/or does not have an adequate written description of the claim limitations: "inferring occurrence of the event and a context in which the event occurred" (claims 1 & 20, and by dependency, claims 2–4, 24, & 25) and "infer occurrence of the event and a context in which the event occurred" (claim 40) (collectively, the "inferring limitations").  As noted above, all of the asserted claims either contain one of the inferring limitations or depend from an independent claim that contains one of the inferring limitations.

The written description requirement of 35 U.S.C. § 112 was not met as to the inferring limitations because the claims contain subject matter which was not described in the specification in such a way as to reasonably convey to one skilled in the art that the inventors, at the time the application was filed, had possession of the claimed invention.  Further, the enablement requirement of 35 U.S.C. § 112 was not met as to the inferring limitations because

the subject matter of those limitations was not described in such a way as to enable one skilled in the art to which it pertains to make and/or use the invention.  A person of ordinary skill in the art would be unable to make and/or use the claimed apparatus because there is no explanation of its design, structure, or functionality beyond the claim language, which was new matter added during prosecution.  The claim language itself identifies new, vague, and unsupported elements and functionalities for which the specification fails to provide enabling support.

The terms infer or inferring do not exist in the specification.  The specification and original claims do not describe any embodiment where the occurrence of an event and a context in which the event occurred is inferred.  All limitations must appear in the specification.  This failure to expressly describe the inferring of an occurrence of the event and a context in which the event occurred results in a specification that fails to convey to one of ordinary skill that the inventors were in possession of the invention at the time of filing.  Moreover, the specification fails to enable one skilled in the art to make and/or use the invention because it provides no teachings related to the inferring of an occurrence of an event and a context in which the event occurred.  A person of ordinary skill would be unable to make and/or use the claimed apparatus because there is no explanation of its design, structure, or functionality beyond the claim language.

## V.      Document Production

Pursuant to P.R. 3-4(a) and to the extent relevant and discoverable, each Defendant is producing and/or making available for inspection and copying source code and/or related documents to show the operation of any aspects or elements of each accused instrumentality to the extent identified by Plaintiff in its P.R. 3-1(c) chart.

Pursuant to P.R. 3-4(b), Defendants are producing concurrently herewith each item identified pursuant to P.R. 3-3(a) that does not appear in the file history of the patent at issue, with the exception of materials designated in Attachment R—those materials are being concurrently, but separately, produced by Defendant Northern Tool.

August 30, 2010

Respectfully submitted,

By: */s/ Leisa Talbert Peschel*
Leisa Talbert Peschel
TX Bar No. 24060414
lpeschel@velaw.com
David Kent Wooten
TX Bar No. 24033477
dwooten@velaw.com
Vinson & Elkins L.L.P.
2500 First City Tower
1001 Fannin Street
Houston, TX 77002
Telephone: 713.758.2222
Facsimile: 713.615.5216

Scott W. Breedlove
TX Bar No. 00790361
LEAD ATTORNEY
Vinson & Elkins L.L.P.
2001 Ross Avenue
3700 Trammell Crow Center
Dallas, TX 75201-2975
Telephone 214.220.7993
Facsimile: 214.999.7993
sbreedlove@velaw.com

**ATTORNEYS FOR DEFENDANT
BLOCKBUSTER INC.**

By: */s/ Vanessa M. Blake*
Mitchell G. Stockwell
mstockwell@kilpatrickstockton.com
(Pro Hac Vice)
Wab P. Kadaba
wkadaba@kilpatrickstockton.com
(Pro Hac Vice)
Vanessa M. Blake
vblake@kilpatrickstockton.com
(Pro Hac Vice)
Kilpatrick Stockton, LLP
1100 Peachtree Street
Suite 2800
Atlanta, Georgia 30309-4530
Tel: (404) 815-6500
Fax: (404) 815-6555

**ATTORNEYS FOR DEFENDANTS
1-800-FLOWERS.COM, INC.; THE PLOW
& HEARTH, INC.; THE POPCORN
FACTORY, INC.; THE WINETASTING
NETWORK; AND THE CHILDREN'S
GROUP, INC.; NORTHERN TOOL &
EQUIPMENT COMPANY, INC. AND
NORTHERN TOOL & EQUIPMENT
CATALOG COMPANY, INC.; OFFICE
DEPOT, INC.**

By:/s/ Michael J. Hickey
Michael J Hickey
Jennifer L Gustafson
Lewis Rice & Fingersh - St Louis
600 Washington Ave , Ste 2500
St Louis, MO 63101
Tel: (314) 444-7847
Fax: (314) 612-7847
mhickey@lewisrice.com
jgustafson@lewisrice.com

John Robert Mercy
Mercy Carter Tidwell, L.L.P.
1724 Galleria Oaks Drive
Texarkana, TX 75503
Tel: (903) 794-9419
Fax: (903) 7941268
jmercy@texarkanalawyers.com

**ATTORNEYS FOR DEFENDANT
BUILD-A-BEAR WORKSHOP, INC.**

By: /s/ Neil J. McNabnay
Neil J. McNabnay
Thomas M. Melsheimer
Tim K. Brown
Britnee Reamy
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, TX  75201
Tel: (214) 747-5070
Fax: (214) 747-2091
mcnabnay@fr.com
melsheimer@fr.com
tkbrown@fr.com
reamy@fr.com

**ATTORNEYS FOR DEFENDANTS
BARNESANDNOBLE.COM LLC;
BARNES & NOBLE, INC.; AND J&R
ELECTRONICS INC.**

By /s/ Matthew A Braunel
Dean L. Franklin
Matthew A Braunel
Thompson Coburn LLP
One US Bank Plaza
St. Louis, Missouri 63101
Tel: (314) 552-6000
Fax: (314) 552-7000
dfranklin@thompsoncoburn.com
mbraunel@thompsoncoburn.com

Trey Yarbrough, Bar No. 22133500
Debby E. Gunter, Bar No. 24012752
Yarbrough Wilcox, PLLC
100 E. Ferguson Street
Suite 1015
Tyler, TX 75702
Tel: (903) 595-3111
Fax: (903) 595-0191
trey@yw-lawfirm.com
debby@yw-lawfirm.com

**ATTORNEYS FOR DEFENDANTS
GANDER MOUNTAIN, INC.
OVERTON'S INC.**

By: /s/ Lane M. Chitwood
John N. Zarian
Lane Chitwood
Zarian Midgley & Johnson PLLC
960 Broadway, Suite 250
Boise, Idaho 83706
Tel: (208) 562-4900
Fax: (208) 562-4901
zarian@zmjlaw.com
chitwood@zmjlaw.com

Trey Yarbrough, Bar No. 22133500
Debby E. Gunter, Bar No. 24012752
Yarbrough Wilcox, PLLC
100 E. Ferguson Street
Suite 1015
Tyler, TX 75702
Tel: (903) 595-3111
Fax: (903) 595-0191
trey@yw-lawfirm.com

**ATTORNEYS FOR DEFENDANTS
NEWEGG INC. and NEWEGG.COM INC.**

By: */s/ James M. Sulentic*
John P. Passarelli, NE Bar No. 16018
James M. Sulentic, NE Bar No. 19610
KUTAK ROCK LLP
The Omaha Building
1650 Farnam Street
Omaha, NE 68102-2186
Tel: (402) 346-6000
Fax: (402) 346-1148
james.sulentic@kutakrock.com
john.passarelli@kutakrock.com

Gregory P. Love
Stevens Love
P.O. Box 3427
109 West Tyler Street
Longview, TX 75606-3427
Tel: (903) 753-6760
Fax: (903) 753-6761
greg@stevenslove.com

**ATTORNEYS FOR DEFENDANTS**
**OMAHA STEAKS INTERNATIONAL,**
**INC. AND OMAHASTEAKS.COM, INC.**

By */s/ Jennifer Beth Ingram*
Jamil N Alibhai
Jennifer Beth Ingram
Munck Carter LLP
12770 Coit Road
600 Banner Place
Dallas, TX 75251
Tel:  (972) 628-3600
Fax: (972) 628-3616
jalibhai@munckcarter.com
jingram@munckcarter.com

**ATTORNEYS FOR DEFENDANTS**
**GAMESTOP CORP., GAMESTOP, INC.,**
**AND GAMESTOP.COM, INC.**

By: */s/ Mark P. Wine*
Mark P. Wine
Calif. State Bar No. 189897
Cynthia A. Lock
Calif. State Bar No. 173068
André De La Cruz
Calif. State Bar No. 245175
ORRICK, HERRINGTON & SUTCLIFFE
LLP
4 Park Plaza, Suite 1600
Irvine, CA 92614
Tel: (949) 567-6700
Fax: (949) 567-6710
mwine@orrick.com
clock@orrick.com
adelacruz@orrick.com

Lance Vincent
RITCHESON, LAUFFER, VINCENT PC
Two American Center
821 ESE Loop 323, Suite 530
Tyler, TX 75701
Tel: (903) 535-8646
Fax: (903) 533-8646
lancev@rllawfirm.net

**ATTORNEYS FOR DEFENDANT**
**THE TIMBERLAND COMPANY**
**ATTORNEYS FOR DEFENDANT**
**THE TIMBERLAND COMPANY**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing Joint Invalidity Contentions and accompanying document production pursuant to P.R. 3-4(b) was served on counsel for Plaintiff by mail on August 30, 2010 to:

> Andrew W. Spangler
> Spangler Law Firm
> 208 N. Green Street, Suite 300
> Longview, TX 75601

with a copy served electronically to:

| | |
|---|---|
| Adam Craig Saxon | Patrick Anderson |
| adam@saxonlawfirm.com | Patrick@prapllc.com |
| Andrew Spangler | Eric W. Buether |
| spangler@spanglerlawpc.com | Eric.Buether@BJCIPLaw.com |
| David Pridham | Christopher M. Joe |
| david@PridhamIPLaw.com | Chris.Joe@BJCIPLaw.com |
| Hao Ni | Brian A. Carpenter |
| hni@nilawfirm.com | Brian.Carpenter@BJCIPLaw.com |

The undersigned further certifies that a copy of the foregoing Joint Invalidity Contentions and accompanying document production pursuant to P.R. 3-4(b) was served on counsel for each Defendant electronically at the addresses noted in the above signature block on August 30, 2010.

> *   /s/ Leisa Talbert Peschel                *