# Exhibit D

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

SFA SYSTEMS, LLC,

        Plaintiff,

v.

BIGMACHINES, INC., *et al.*

        Defendants.

Civil Action No. 6:10-cv-00300
Jury Trial Demanded

### JOINT INVALIDITY CONTENTIONS

Pursuant to P.R. 3-3 and the Court's Docket Control Order, Defendants BigMachines, Inc., Carestream Health, Inc., Enterasys Networks, Inc., Hyundai Motor America, Inc., and Ricoh Americas Corporation (collectively, "Defendants") serve their Joint Invalidity Contentions for U.S. Patent No. 6,067,525 ("the '525 Patent") on Plaintiff SFA Systems, LLC ("SFA").

SFA served each Defendant with Infringement Contentions alleging infringement of the '525 Patent.  Specifically, SFA alleged that Defendants infringe claims 1-4, 20, 24, 25 and/or 40 of the '525 Patent (collectively, the "Asserted Claims").  Because the Patent Rules require that a Defendant accused of infringement set forth invalidity contentions with regard to the claims asserted against it, *see* P.R. 3-3(a), Defendants join in these contentions for each Asserted Claim.

Defendants' Joint Invalidity Contentions ("Invalidity Contentions") reflect their knowledge, understanding and contentions as of this early date in the present action.  Defendants' search for prior art is ongoing, and accordingly, Defendants reserve the right to modify and supplement, without prejudice, their Invalidity Contentions in the event that additional prior art is identified during the course of discovery and/or in response to any amendment by Plaintiff of its Infringement Contentions in accordance with P.R. 3-6, the Federal Rules of Civil Procedure, and

other applicable rules and statutes.[1]

Defendants submit their Invalidity Contentions without waiving or contradicting Defendants' position that Plaintiff's Infringement Contentions do not comply with the Local Patent Rules.  For example, Plaintiff's Infringement Contentions do not adequately point out any accused instrumentality with the specificity required by the Local Patent Rules.

The disclosures herein are not and should not be construed as a statement that no other persons have discoverable information, that no other documents, data compilations and/or tangible things exist that Defendants may use to support their claims or defenses, or that no other legal theories or factual bases will be pursued.

Each of the asserted claims[2] of the Patent-in-Suit is anticipated by and/or rendered obvious in view of one or more of items of prior art identified herein alone or in combination.  Much of the art identified in the attached exhibits reflect common knowledge and the state of the art at the time of filing the Patent-in-Suit.  Specific examples of anticipation and obviousness, along with the motivation to combine the selected prior art, are set forth below.

Where Defendants identify a particular figure in a prior art reference, the identification should be understood to encompass the caption and description of the figure as well as any text relating to the figure in addition to the figure itself.  Similarly, where an identified portion of text refers to a figure or other material, the identification should be understood to include the referenced figure or other material as well.  Furthermore, the combinations of references provided

---

[1] Specifically, Defendants are diligently pursuing additional prior art concerning e-commerce systems that were available for use on the internet, Compuserve, Prodigy, and other commercial online services, including, without limitation, documentation evidencing the operation of Amazon.com and similar e-commerce systems.  Defendants will timely supplement these invalidity contentions with specific identifications of such systems and corresponding P.R. 3-3(c) invalidity charts upon receipt of such materials from third party sources.

[2] For reasons analogous to those identified herein, Defendants contend all *non-asserted* claims of the '525 Patent are invalid as anticipated and/or rendered obvious in view of the prior art or invalid under 35 U.S.C. § 112.

below under 35 U.S.C. § 103 are merely exemplary and are not intended to be exhaustive, as there are many possible combinations of the references listed herein and it is not practical, prior to further factual investigation and claim construction proceedings, to identify and list all potentially relevant combinations.  Additional combinations of the references identified below are possible, and Defendants reserve the right to use any such combination(s) in this litigation.  In particular, Defendants are currently unaware of the extent, if any, to which SFA will contend that limitations of the claims at issue are not disclosed in the art identified by Defendants as anticipatory.  To the extent that an issue arises with any such limitation, Defendants reserve the right to identify other references that would have made obvious the addition of the allegedly missing limitation to the disclosed reference.

## I.    P.R. 3-3(a): Identification of Prior Art References

Pursuant to Patent L.R. 3-3(a), Defendants list below the prior art now known to Defendants, which Defendants contend anticipates or renders obvious the asserted claims of the '525 Patent.

### A.  Patents – Prior Art Under 35 U.S.C. §§ 102(a), (b), and/or (e)

| Patent No. | Issued/Filed | Exhibit # / Bates Range |
|---|---|---|
| U.S. Pat. No. 4,567,359 ("the '359 Patent") | filed May 24, 1984 issued January 28, 1986 | Exhibit 1 D000001–14 |
| U.S. Pat. No. 4,648,044 ("the '044 Patent") | filed June 6, 1984 issued March 3, 1987 | Exhibit 2 D000015–69 |
| U.S. Pat. No. 4,887,208 ("the '208 Patent") | Filed December 18, 1987 issued December 12, 1989 | Exhibit 3 D001540-1567 |
| U.S. Pat. No. 4,947,028 ("the '028 Patent") | filed July 19, 1988 issued August 7, 1990 | Exhibit 4 D000070–83 |
| U.S. Pat. No. 5,103,498 ("the '498 Patent") | filed August 2, 1990 issued April 7, 1992 | Exhibit 5 D000084–107 |
| U.S. Pat. No. 5,195,031 ("the '031 Patent") | filed October 24, 1988 issued March 16, 1993 | Exhibit 6 D000108–415 |
| U.S. Patent No. 5,303,332 ("the '332 Patent") | filed July 30, 1990 issued April 12, 1994 | Exhibit 7 D001926-1953 |

| U.S. Pat. No. 5,347,632 ("the '632 Patent") | filed July 28, 1989<br>issued September 13, 1994 | Exhibit 8<br>D000416–484 |
|---|---|---|
| U.S. Pat. No. 5,388,165 ("the '165 Patent") | filed January 4, 1994<br>issued February 7, 1995 | Exhibit 9<br>D001568-1646 |
| U.S. Pat. No. 5,463,555 ("the '555 Patent") | filed September 28, 1993<br>issued October 31, 1995 | Exhibit 10<br>D001647-1680 |
| U.S. Pat. No. 5,523, 942 ("the '942 Patent") | filed March 31, 1994<br>issued June 4, 1996 | Exhibit 11<br>D001777-1849 |
| U.S. Pat. No. 5,570,291 ("the '291 Patent") | filed August 31, 1994<br>issued October 29, 1996 | Exhibit 12<br>D000485–528 |
| U.S. Pat. No. 5,576,951 ("the '951 Patent") | filed March 16, 1994<br>issued November, 19, 1996 | Exhibit 13<br>D001681-1719 |
| U.S. Pat. No. 5,660,176 ("the '176 Patent") | filed December 29, 1993<br>issued August 26, 1997 | Exhibit 14<br>D000529–604 |
| U.S. Pat. No. 5,710,887 ("the '887 Patent") | filed August 29, 1995<br>issued January 20, 1998 | Exhibit 15<br>D002010-2042 |
| U.S. Pat. No. 5,715,314 ("the Payne '314 Patent") | filed October 24, 1994<br>issued February 3, 1998 | Exhibit 16<br>D001878-1925 |
| U.S. Pat. No. 5,734,837 ("the '837 Patent") | filed January 14, 1994<br>issued March 31, 1998 | Exhibit Ex 17<br>D001720-1776 |
| U.S. Pat. No. 5,774,868 ("the '868 Patent") | filed December 23, 1994<br>issued June 30, 1998 | Exhibit 18<br>D000605–635 |
| U.S. Pat. No. 5,999,908 ("the '908 Patent") | filed September 19, 1997<br>(continuation of Application No. 08/243,638 filed May 16, 1994)<br>issued December 7, 1999 | Exhibit 19<br>D000636–726 |
| U.S. Pat. No. 6,005,531 ("the '531 Patent") | filed June 23, 1997<br>(continuation of Application No. 08/065,132 filed May 20, 1993)<br>issued April 25, 2000 | Exhibit 20<br>D000727–756 |

## B.  Publications – Prior Art Under 35 U.S.C. §§ 102(a) and/or (b)

| AUTHOR, TITLE, PUBLICATION INFORMATION (EXHIBT #) (BATES RANGE) |
|---|
| D. O'Leary, "Artificial Intelligence and Expert Systems in Accounting Databases: Survey and Extensions," Expert Systems with Applications, Vol. 3, 1991 ("the O'Leary Reference") (Exhibit 21) (D000757–766). |
| M. Steinberg & R. Plank, "Expert Systems: The Integrative Sales Management Tool of the Future," Journal of the Academy of Marketing Science, Vol. 15, No. 2, Summer 1987 ("the Steinberg Reference") (Exhibit 22) (D000767–774). |

| |
|---|
| G. Colombo, "Sales Force Automation: Using the Latest Technology to Make Your Sales Force More Competitive," McGraw-Hill, Inc., 1994 ("the Colombo Reference") (Exhibit 23) (D000775–836). |
| H. Kleinert & R. Rao, SAMS Strategic Account Management System, IAAI-95 Proceedings, AAAI, 1995 ("the SAMS Reference") (Exhibit 24) (D000837–849). |
| Hinke et al., "Genie: A Database Generator for Testing Inference Detection Tools," TR-UAH-CS-1995-02, Computer Science Dept., Univ. Alabama in Huntsville, February 1995 (http://www.cs.uah.edu/tech-reports/TR-UAH-CS-1995-02.pdf) ("the Genie Reference") (Exhibit 25) (D001498-1539). |
| T. Negrino, "Sales Automation Software," Macworld, Vol. 10, No. 10, October 1993 ("the Negrino Reference") (Exhibit 26) (D001850-1856). |
| J. McDermott, "R1: A Rule-Based Configurer of Computer Systems," Dept. of Computer Science, Carnegie Mellon University, April 1980 ("the McDermott Reference") (Exhibit 27) (D001954-2009). |
| V. Barker et al., "Expert Systems for Configuration at Digital: XCON and Beyond," Communications of the ACM, Vol. 32, No. 3, March 1989 ("the Baker Reference") (Exhibit 28) (D001857-1877). |
| "Truck Force Tools User's Guide," Clear with Computers, 1992 ("the Truck Force Reference") (Exhibit 29) (D002043-2275). |
| M. Spezialetti, "An Approach to Reducing Delays in Recognizing Distributed Event Occurrences," Association for Computing Machinery, 1991 ("the Spezialetti Reference") (Exhibit 30) (D000850a–861a). |
| Computer Assisted Sales System Whole Goods System ("the CASS system") as described in[3]: <ul><li>"CASS Sales and Training System Operators Manual" (1990) (OR038479-679).</li><li>"CASS Sales and Training System Read Me First" (1990) (OR038453-78).</li><li>Jerome Johnson Deposition Testimony, July 1, 2005 & January 17, 2006, *Orion IP LLC v. Staples*, No. 2:04-cv-297-LED Deposition Trans.; *Orion IP LLC v. Ford Motor Co.*, Civ. 2:04-CV-313 Deposition Trans.</li><li>Jerome Johnson Exhibit 3 (Sample proposal) October 23, 1987 & November 3, 1987, (JJ000107-142).</li></ul> |

## C.  Public Use/Sale/Offer for Sale – Prior Art Under 35 U.S.C. §§ 102(a) and/or (b)

Defendants  also  note  that  the  prosecution  history  of  the  '525  Patent  indicates  that

software potentially embodying the claimed invention was sold prior to the critical date of the

---

[3] Prior Art references related to the CASS System may qualify as prior art under 35 U.S.C. §§ 102(a), (b), and/or (e). These references will be produced upon agreement and clearance from Clear With Computers, LLC in accordance with the protective order entered in *Clear With Computers, LLC v. Hyundai Motor America, Inc.*, Civ. Case No. 6:08-CV-479, Eastern District of Texas.

'525 Patent.  References concerning such sales are listed in an IDS within the prosecution history of the '525 Patent, but the references themselves were not disclosed by Plaintiff in their P.R. 3-2 disclosures.  Defendants reserve the right to take discovery regarding these prior art sales, and if warranted, assert invalidity of the '525 Patent under 35 U.S.C. § 102(b) for a prior art sale and/or public use.

In addition, Defendants identify the Specpro automated sales software developed by CWC Inc. (Mankato, MN) for Freightliner Corporation.  The Specpro system was known to the public by September, 1994.   Defendants will subpoena CWC Inc. for discovery regarding the Specpro system.  Defendants reserve the right to amend these Invalidity Contentions based on any prior art references received and reviewed pursuant to that subpoena.

### D. Prior Art Indentified under 35 U.S.C. § 102(g)

Plaintiff provided no evidence that any of the Patents-in-Suit are entitled to an invention date earlier than the October 30, 1995 filing date.  Accordingly, since each prior art patent, publication or product identified above was either filed or issued (for patents), published (for publications), or known, used, offered for sale or sold (for products) before October 30, 1995, and none appears to have been abandoned, suppressed or concealed, each such reference logically also constitutes evidence of prior invention pursuant to 35 U.S.C. § 102(g).  The persons or entities involved with each such invention include the named inventors on the above-identified patents, the authors listed on the above-identified publications, and the entities and individuals identified in connection with the above-identified products.  Investigation, analysis and discovery are ongoing in this matter, and Defendants reserve the right to supplement this response as appropriate.

### E.  Prior Art Identified in Other Cases

Defendants further incorporate by reference any prior art disclosed as anticipating and/or rendering obvious the claims of the '525 Patent in the invalidity contentions from prior lawsuits concerning the '525 Patent, including but not limited to, any prior art identified in the invalidity contentions served in the lawsuits *SFA Systems, L.L.C. f/k/a Triton IP, L.L.C. v. Infor Global Solutions (Michigan), Inc., et al.*, C.A. No. 6:07-cv-067, Eastern District of Texas and *SFA Systems, LLC v. 1-800-Flowers.com, Inc.*, C.A. No. 6:09-cv-340-LED, Eastern District of Texas. Pursuant to P-R 3.3(a), the prior art references identified in prior litigations include, but are not limited to (Exhibit 1A) (D000850-1497):

| PRIOR ART REFERENCE IDENTIFIED IN PRIOR CASES INVOLVING THE '525 PATENT |
| --- |
| U.S. Pat. No. 4,853,852 ("the '852 Patent") (D000850-858) |
| U.S. Pat. No. 4,931,932 ("the '932 Patent") (D001424-1430) |
| U.S. Pat. No. 5,117,354 ("the '354 Patent") (D001409-1423) |
| U.S. Pat. No. 5,168,445 ("the '445 Patent") (D001386-1408) |
| U.S. Pat. No. 5,191,522 ("the '522 Patent") (D001355-1385) |
| U.S. Pat. No. 5,201,010 ("the '010 Patent") (D001260-1354) |
| U.S. Pat. No. 5,216,592 ("the '592 Patent") (D001260-1269) |
| U.S. Pat. No. 5,283,856 ("the '856 Patent") (D001230-1259) |
| U.S. Pat. No. 5,283,865 ("the '865 Patent") (D001138-1229) |
| U.S. Pat. No. 5,309,355 ("the '355 Patent") (D001123-1137) |
| U.S. Pat. No. 5,349,662 ("the '662 Patent") (D001109-1122) |
| U.S. Pat. No. 5,367,627 ("the '627 Patent") (D001017-1108) |
| U.S. Pat. No. 5,446,653 ("the '653 Patent") (D001000-1016) |
| U.S. Pat. No. 5,450,314 ("the '314 Kagami Patent") (D000975-999) |
| U.S. Pat. No. 5,630,127 ("the '127 Patent") (D000942-974) |
| U.S. Pat. No. 5,657,233 ("the '233 Patent") (D000912-941) |
| U.S. Pat. No. 5,717,595 ("the '595 Patent") (D000880-911) |
| U.S. Pat. No. 6,023,683 ("the '683 Patent") (D000859-879) |
| U.S. Pat. No. 6,061,506 ("the '506 Patent") (D001431-1478) |
| E. Casanova, et al., "Expert System for Automatic Authorization of Deficits." IEEE, 1989 ("the Casanova Reference") (D001479–1483). |
| H.C. Harrison & Q. Gong, "An Intelligent Business Forecasting System," Association of Computer Machinery 089791-558-5, 1993 ("the Harrison Reference") (D001484–1491). |
| R. Stone & D. Good, "Expert Systems and Sales Strategies," Association of Computer Machinery 089791-416-3, 1990 ("the Stone Reference") (D001492–1497). |
| Omaha Steaks System (by 1993).  Omaha Steaks customer and buyer sales system and database |

have been in place since 1988 with additional functionalities implemented by 1993. At least the following individual has knowledge regarding use of the Omaha Steaks customer buyer sales system and database by 1993: Jeffrey Carter ("the Omaha Steaks System").[4]

Northern Tool's MOMS System (by 1993).   The MOMS system is a software system and method used in call centers of Northern Tool & Equipment and its predecessor entity in order to facilitate catalog sales. The MOMS system was operational as early as 1984. The MOMS system was used by call center operators in order to enter orders from customers and among other things recognized the change of state characteristic of events and associated context prompting customers if they had interest in purchasing additional items in addition to those requested. Those most knowledgeable about the MOMS system and method are Brad Peterson of Northern Tool & Equipment and call center managers and operators using MOMS in the 1984 to 1995 timeframe ("the Northern Tools Reference").[5]

## II.      P.R. 3-3(b): Anticipation/Obviousness

Pursuant to P.R. 3-3(b), Defendants contend that each of the asserted claims of the '525 patent is anticipated by and/or rendered obvious in view of one or more items of prior art identified in Sections I.A. (list of prior art patents), I.B. (list of prior art publications), I.C. (list of prior art offered for sale or publicly used or known), I.D. (prior invention), and/or I.E. (prior art identified in other cases), alone or in combination.  Generally, it would have been obvious to one of ordinary skill in the art to combine any of these references to arrive at the claimed invention.

Under the standard for obviousness, claims must be rejected as unpatentable where "the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103(a).

In *KSR Int'l Co. v. Teleflex Inc.*, the U.S. Supreme Court noted that the obviousness analysis must also allow for consideration of "the inferences and creative steps that a person of

---

[4] Materials related to the Omaha Steaks System were previously produced in the law suit *SFA Systems, LLC v. 1-800-Flowers.com, Inc.*, C.A. No. 6:09-cv-340-LED, Eastern District of Texas.  These materials are incorporated by reference only and not part of Exhibit 1A.

ordinary skill in the art would employ." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 418 (2007). The U.S. Supreme Court mandated that the obviousness analysis allow for "common sense" and "ordinary creativity" without necessarily requiring "precise teachings directed to the specific subject matter of the challenged claim[s]." *Id.*   According to the U.S. Supreme Court, "[t]he combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results." *Id.* at 416.   The U.S. Supreme Court also pointed out that "common sense directs one to look with care at a patent application that claims as innovation the combination of two known devices according to their established functions, [and] it can be important to identify a reason that would have prompted a person of ordinary skill in the relevant field to combine the elements in the way the claimed new invention does." *Id.* at 418.

## A.     Motivation to Combine

To the extent that applicable law requires evidence of motivation to combine, motivation exists to combine one or more of the references included in these Invalidity Contentions with each other.  Generally, motivation to combine any of these references with others exists within the references themselves, as well as within the knowledge of those of ordinary skill in the art at the relevant time.  For example, many of these references identify and address the same technical issues and suggest very similar solutions to those issues in the field of computer implemented systems and particularly automated computer sales systems.  If and to the extent that SFA challenges the correspondence of any of these references with respect to particular elements of the asserted claims of the '525 Patent, Defendants reserve the right to supplement these Invalidity Contentions to identify additional motivations to combine particular references with one another.

---

[5] Materials related to the Northern Tools System were previously produced in the law suit *SFA Systems, LLC v. 1-800-Flowers.com, Inc.*, C.A. No. 6:09-cv-340-LED, Eastern District of Texas.  These materials are incorporated by reference only and not part of Exhibit 1A.

B.     **Combinations**

Defendants may rely upon a subset of the references or all of the references depending upon the Court's claim construction and further investigation. Defendants' contentions that the references in this section, in various combinations, render the asserted claims of the '525 Patent obvious under 35 U.S.C. § 103 are in no way an admission or suggestion that each reference does not independently anticipate the asserted claims under 35 U.S.C. § 102.  Any of the references disclosed herein may be combined with other references disclosed herein and/or with the knowledge of one of ordinary skill in the art during the relevant time period to render obvious, and therefore invalid, each of the asserted claims of the Patent-in-Suit.  These combinations are not intended to be exhaustive, as there are many possible combinations of the references listed herein and it is not practical, particularly at this early stage prior to further factual investigation and claim construction proceedings, to identify and list all potentially relevant combinations. In particular, the asserted claims of the '525 Patent are rendered obvious under 35 U.S.C. § 103 in view of at least, and without limitation, the following combinations.

1.  *The '359 Patent combined with the '868 Patent*

One of ordinary skill in the art would have had a reason to combine the '359 Patent with the '868 Patent, at least because these references both relate to automated sales systems.  The '359 Patent is directed to, for example, a "system for automatically dispensing information, goods and services to a customer on a self-service basis including a central data processing center in which information on services offered by various institutions in a particular industry is stored." '359 Patent at abstract.  In the same field of endeavor, the '868 Patent, like the '359 Patent, discloses an "automated sales promotion selection system" that "identif[ies] promising sales promotions based on recent customer purchases," and "includes a customer information

10

device that receives customer data relating to customer purchases of items from an inventory of items." '868 Patent at abstract.

Although Defendants contend that the '359 Patent anticipates all asserted claims under 35 U.S.C. § 102, to the extent the '359 Patent is found not to disclose all limitations of the asserted claims, it would have been obvious to one of ordinary skill to combine the '359 Patent and the '868 Patent because they teach the use of known elements and methods.  For example, if the '359 Patent is found not to disclose facilitating a new action based on the inferred context, modifying the sales and information terminal or central data processing center of the '359 Patent to do the same as disclosed in the '868 Patent at 2:56–59, 5:56–61, 10:53–56, 18:21–29 would yield predictable results.  As another example, if the '359 Patent is found not to disclose memory for storing rules that indicate subsequent actions to be taken upon occurrence of an event and a decision subsystem that identifies such stored rules and initiates operations based on the same, it would have been obvious to one of ordinary skill to combine the '359 Patent and the '868 Patent because modifying the sales and information terminal or central data processing center of the '359 Patent to include the same as disclosed in the '868 Patent at 8:1–7, 9:22–65, 10:19–31, 11:60–67, 14:48–55, 18:49–60 would yield predictable results.

### 2.  *The '359 Patent combined with the SAMS Reference*

One of ordinary skill in the art would have had a reason to combine the '359 Patent with the SAMS Reference, at least because these references both relate to automated sales systems. The '359 Patent is directed to, for example, a "system for automatically dispensing information, goods and services to a customer on a self-service basis including a central data processing center in which information on services offered by various institutions in a particular industry is stored." '359 Patent at abstract.  In the same field of endeavor, the SAMS Reference, like the

11

'359 Patent, discloses an expert system to provide account management and sales support such as recommending sales strategies and generating letters.

Although Defendants contend that the '359 Patent anticipates all asserted claims under 35 U.S.C. § 102, to the extent the '359 Patent is found not to disclose all limitations of the asserted claims, it would have been obvious to one of ordinary skill to combine the '359 Patent and the SAMS Reference because they teach the use of known elements and methods.  For example, if the '359 Patent is found not to disclose facilitating a new action based on the inferred context, modifying the sales and information terminal or central data processing center of the '359 Patent to do the same as disclosed in the SAMS Reference at p. 78, col. 2. would yield predictable results.  As another example, if the '359 Patent is found not to disclose memory for storing rules that indicate subsequent actions to be taken upon occurrence of an event and a decision subsystem that identifies such stored rules and initiates operations based on the same, it would have been obvious to one of ordinary skill to combine the '359 Patent and the SAMS Reference because modifying the sales and information terminal or central data processing center of the '359 Patent to include the same as disclosed in the SAMS Reference at pp. 85-86 would yield predictable results.

### 3.  *The '028 Patent combined with the '868 Patent*

One of ordinary skill in the art would have had a reason to combine the '028 Patent with the '868 Patent, at least because these references both relate to automated sales systems.  The '028 Patent is directed to, for example, an "automated order and payment system for use by consumers to rapidly order products and services from any location at which the consumer is present at the time of ordering." '028 Patent at abstract.  In the same field of endeavor, the '868 Patent, like the '028 Patent, discloses an "automated sales promotion selection system" that

"identif[ies] promising sales promotions based on recent customer purchases," and "includes a customer information device that receives customer data relating to customer purchases of items from an inventory of items." '868 Patent at abstract.

Although Defendants contend that the '028 Patent anticipates all asserted claims under 35 U.S.C. § 102, to the extent the '028 Patent is found not to disclose all limitations of the asserted claims, it would have been obvious to one of ordinary skill to combine the '028 Patent and the '868 Patent because they teach the use of known elements and methods.  For example, if the '028 Patent is found not to disclose detecting changes in state characteristic of an event and inferring the occurrence of the event, modifying the central computer system (CCS) of the '028 Patent to do the same as disclosed in the '868 Patent at Figs. 2 & 10, 2:42–66, 9:9–35, 11:36–12:13, 12:30–34, 18:21–29, 19:3–43, 19:60–67, 20:6–21:2 would yield predictable results.

### 4.  *The '028 Patent combined with the SAMS Reference*

One of ordinary skill in the art would have had a reason to combine the '028 Patent with the SAMS Reference, at least because these references both relate to automated sales systems. The '028 Patent is directed to, for example, an "automated order and payment system for use by consumers to rapidly order products and services from any location at which the consumer is present at the time of ordering." '028 Patent at abstract. In the same field of endeavor, the SAMS Reference, like the '028 Patent, discloses an expert system to provide account management and sales support such as recommending sales strategies and generating letters.

Although Defendants contend that the '028 Patent anticipates all asserted claims under 35 U.S.C. § 102, to the extent the '028 Patent is found not to disclose all limitations of the asserted claims, it would have been obvious to one of ordinary skill to combine the '028

13

Patent and the SAMS Reference because they teach the use of known elements and methods. For example, if the '028 Patent is found not to disclose detecting changes in state characteristic of an event and inferring the occurrence of the event, modifying the central computer system (CCS) of the '028 Patent to do the same as disclosed in the SAMS reference at pp. 80, 85 would yield predictable results.

### 5. *The '031 Patent combined with the '868 Patent*

One of ordinary skill in the art would have had a reason to combine the '031 Patent with the '868 Patent, at least because these references both relate to automated sales systems.  The '031 Patent is directed to, for example, a video communication trading system which is utilized for buying and selling currencies.  '031 Patent at abstract, 9:15–46.  In the same field of endeavor, the '868 Patent, like the '031 Patent, discloses an "automated sales promotion selection system" that "identif[ies] promising sales promotions based on recent customer purchases," and "includes a customer information device that receives customer data relating to customer purchases of items from an inventory of items."  '868 Patent at abstract.

Although Defendants contend that the '031 Patent anticipates all asserted claims under 35 U.S.C. § 102, to the extent the '031 Patent is found not to disclose all limitations of the asserted claims, it would have been obvious to one of ordinary skill to combine the '031 Patent and the '868 Patent because they teach the use of known elements and methods.  For example, if the '031 Patent is found not to disclose linking the inferred event with an action based on prior sales experience, modifying the system of the '031 Patent to do the same as disclosed in the '868 Patent at Fig. 14, 2:56–59, 8:29–35, col. 13, 14:20–22, 17:33–35, col. 19, 20:61–21:2 would yield predictable results.

### 6. *The '031 Patent combined with the SAMS Reference*

14

One of ordinary skill in the art would have had a reason to combine the '031 Patent with the SAMS Reference, at least because these references both relate to automated sales systems. The '031 Patent is directed to, for example, a video communication trading system which is utilized for buying and selling currencies. '031 Patent at abstract, 9:15–46. In the same field of endeavor, the SAMS Reference, like the '031 Patent, discloses an expert system to provide account management and sales support such as recommending sales strategies and generating letters.

Although Defendants contend that the '031 Patent anticipates all asserted claims under 35 U.S.C. § 102, to the extent the '031 Patent is found not to disclose all limitations of the asserted claims, it would have been obvious to one of ordinary skill to combine the '031 Patent and the SAMS Reference because they teach the use of known elements and methods. For example, if the '031 Patent is found not to disclose linking the inferred event with an action based on prior sales experience, modifying the system of the '031 Patent to do the same as disclosed in the SAMS Reference at p. 85 would yield predictable results.

### 7.  *The '632 Patent combined with the '868 Patent*

One of ordinary skill in the art would have had a reason to combine the '632 Patent with the '868 Patent, at least because these references both relate to automated sales systems. The '632 Patent is directed to, for example, an "interactive computer system network" that "enables a user to . . . perform desired transactional services, such as banking and shopping" and "monitor[s user characteristics] . . . in order to generate and display specific advertisements to the user based on individual usage characteristics and predetermined interests." '632 Patent at abstract. In the same field of endeavor, the '868 Patent, like the '632 Patent, discloses an "automated sales promotion selection system" that "identif[ies] promising sales promotions based on recent

customer purchases," and "includes a customer information device that receives customer data relating to customer purchases of items from an inventory of items." '868 Patent at abstract.

Although Defendants contend that the '632 Patent anticipates all asserted claims under 35 U.S.C. § 102, to the extent the '632 Patent is found not to disclose all limitations of the asserted claims, it would have been obvious to one of ordinary skill to combine the '632 Patent and the '868 Patent because they teach the use of known elements and methods. For example, if the '632 Patent is found not to disclose automatically initiating an operation using a subsystem, modifying the system of the '632 Patent to do the same as disclosed in the '868 Patent at 2:54-59, 4:43–48, 10:37–41, 17:64–67, 18:21–29, col. 19, 20:61–21:2 would yield predictable results.

### 8. *The '291 Patent combined with the '868 Patent*

One of ordinary skill in the art would have had a reason to combine the '291 Patent with the '868 Patent, at least because these references both relate to automated sales systems. The '291 Patent is directed to, for example, a "system and method for generating estimates and orders for the manufacture of custom items" for "access by sales representatives at remote sales sites," in which a "sales representative creates an item specification for a form to be manufactured and electronically transmits it to the corporate office for estimate data[; d]ata relating to the cost and list price to produce the form based on the item specification is transmitted to the sales representative[; and t]he sales representative determines a sell price from the pricing data, and generates a production order using the item specification and the estimate data, among other data." '291 Patent at abstract. In the same field of endeavor, the '868 Patent, like the Steinberg Reference, discloses an "automated sales promotion selection system" that "identif[ies] promising sales promotions based on recent customer purchases," and "includes a customer information device that receives customer data relating to customer purchases of items from an inventory of

16

items." '868 Patent at abstract.

Although Defendants contend that the '291 Patent anticipates all asserted claims under 35 U.S.C. § 102, to the extent the '291 Patent is found not to disclose all limitations of the asserted claims, it would have been obvious to one of ordinary skill to combine the '291 Patent and the '868 Patent because they teach the use of known elements and methods. For example, if the '291 Patent is found not to disclose an event manager, modifying the system of the '291 Patent to do the same as disclosed in the '868 Patent at fig. 2 & 10, 2:28–56, cols. 4–5, 9:9–35, 11:36–12:34, 13:17–19, 14:25–26, 18:21–29, col. 19, 20:10–21:2, would yield predictable results. As another example, if the '291 Patent is found not to disclose linking an inferred event with an action, it would have been obvious to one of ordinary skill to combine the '291 Patent and the '868 Patent because modifying the system of the Steinberg Reference to do the same as disclosed in the '868 Patent at fig. 14, 2:56–59, 8:29–35, col. 13, 14:20–22, 17:33–35, col. 19, 20:61–21:2 would yield predictable results.

### 9. *The '291 Patent combined with the SAMS Reference*

One of ordinary skill in the art would have had a reason to combine the '291 Patent with the SAMS Reference, at least because these references both relate to automated sales systems. The '291 Patent is directed to, for example, a "system and method for generating estimates and orders for the manufacture of custom items" for "access by sales representatives at remote sales sites," in which a "sales representative creates an item specification for a form to be manufactured and electronically transmits it to the corporate office for estimate data[; d]ata relating to the cost and list price to produce the form based on the item specification is transmitted to the sales representative[; and t]he sales representative determines a sell price from the pricing data, and generates a production order using the item specification and the estimate data,

17

among other data." '291 Patent at abstract.  In the same field of endeavor, the SAMS Reference, like the '291 Patent, discloses an expert system to provide account management and sales support such as recommending sales strategies and generating letters.

Although Defendants contend that the '291 Patent anticipates all asserted claims under 35 U.S.C. § 102, to the extent the '291 Patent is found not to disclose all limitations of the asserted claims, it would have been obvious to one of ordinary skill to combine the '291 Patent and the SAMS Reference because they teach the use of known elements and methods.  For example, if the '291 Patent is found not to disclose an event manager, modifying the system of the '291 Patent to do the same as disclosed in the SAMS Reference at pp. 80, 85 would yield predictable results.  As another example, if the '291 Patent is found not to disclose linking an inferred event with an action, it would have been obvious to one of ordinary skill to combine the '291 Patent and the SAMS Reference because modifying the system of the '291 Patent to do the same as disclosed in the SAMS Reference at p. 85 would yield predictable results.

**10.  *The Steinberg Reference combined with the '868 Patent***

One of ordinary skill in the art would have had a reason to combine the Steinberg Reference with the '868 Patent, at least because these references both relate to automated sales systems.  The Steinberg Reference is directed to, for example, "the concept of developing an expert system to integrate the sales management function within a useful computer-based decision support system," and "demonstrate[s] how this kind of software will greatly enhance the productivity of the sales function."  Steinberg Reference at p.55.  In the same field of endeavor, the '868 Patent, like the Steinberg Reference, discloses an "automated sales promotion selection system" that "identif[ies] promising sales promotions based on recent customer purchases," and "includes a customer information device that receives customer data relating to customer

18

purchases of items from an inventory of items." '868 Patent at abstract.

Although Defendants contend that the Steinberg Reference anticipates all asserted claims under 35 U.S.C. § 102, to the extent the Steinberg Reference is found not to disclose all limitations of the asserted claims, it would have been obvious to one of ordinary skill to combine the Steinberg Reference and the '868 Patent because they teach the use of known elements and methods. For example, if the Steinberg Reference is found not to disclose an event manager, modifying the system of the Steinberg Reference to do the same as disclosed in the '868 Patent at fig. 2 & 10, 2:28–56, cols. 4–5, 9:9–35, 11:36–12:34, 13:17–19, 14:25–26, 18:21–29, col. 19, 20:10–21:2, would yield predictable results. As another example, if the Steinberg Reference is found not to disclose an inferred context that includes information related to whether a previous event has occurred, it would have been obvious to one of ordinary skill to combine the Steinberg Reference and the '868 Patent because modifying the system of the Steinberg Reference to do the same as disclosed in the '868 Patent at 5:6–45, 9:22–35, 13:17–19, 14:25–26, 19:13–63, 20:61–21:2 would yield predictable results. As another example, if the Steinberg Reference is found not to disclose a decision subsystem that identifies rules stored in a memory corresponding to an inferred context and that initiates an operation, it would have been obvious to one of ordinary skill to combine the Steinberg Reference and the '868 Patent because modifying the system of the Steinberg Reference to do the same as disclosed in the '868 Patent at 9:22–35, 10:19–31, 11:60–67 would yield predictable results. As another example, if the Steinberg Reference is found not to disclose linking an inferred event with an action, it would have been obvious to one of ordinary skill to combine the Steinberg Reference and the '868 Patent because modifying the system of the Steinberg Reference to do the same as disclosed in the '868 Patent at fig. 14, 2:56–59, 8:29–35, col. 13, 14:20–22, 17:33–35, col. 19, 20:61–21:2 would yield

19

predictable results.

**11.  *The Steinberg Reference combined with the SAMS Reference***

One of ordinary skill in the art would have had a reason to combine the Steinberg Reference with the SAMS Reference, at least because these references both relate to automated sales systems.  The Steinberg Reference is directed to, for example, "the concept of developing an expert system to integrate the sales management function within a useful computer-based decision support system," and "demonstrate[s] how this kind of software will greatly enhance the productivity of the sales function." Steinberg Reference at p.55.  In the same field of endeavor, the SAMS Reference, like the Steinberg Reference, discloses an expert system to provide account management and sales support such as recommending sales strategies and generating letters.

Although Defendants contend that the Steinberg Reference anticipates all asserted claims under 35 U.S.C. § 102, to the extent the Steinberg Reference is found not to disclose all limitations of the asserted claims, it would have been obvious to one of ordinary skill to combine the Steinberg Reference and the SAMS Reference because they teach the use of known elements and methods.  For example, if the Steinberg Reference is found not to disclose an event manager, modifying the system of the Steinberg Reference to do the same as disclosed in the SAMS Reference at pp. 80, 85 would yield predictable results.  As another example, if the Steinberg Reference is found not to disclose an inferred context that includes information related to whether a previous event has occurred, it would have been obvious to one of ordinary skill to combine the Steinberg Reference and the SAMS Reference because modifying the system of the Steinberg Reference to do the same as disclosed in the SAMS Reference at 85 would yield predictable results.  As another example, if the Steinberg Reference is found not to disclose a decision subsystem that identifies rules stored in a memory corresponding to an inferred context and that

20

initiates an operation, it would have been obvious to one of ordinary skill to combine the Steinberg Reference and the SAMS Reference because modifying the system of the Steinberg Reference to do the same as disclosed in the SAMS Reference at p. 86 would yield predictable results. As another example, if the Steinberg Reference is found not to disclose linking an inferred event with an action, it would have been obvious to one of ordinary skill to combine the Steinberg Reference and the SAMS Reference because modifying the system of the Steinberg Reference to do the same as disclosed in the SAMS Reference at p. 85 would yield predictable results.

### 12. *The SAMS Reference combined with the '868 Patent*

One of ordinary skill in the art would have had a reason to combine the SAMS Reference with the '868 Patent, at least because these references both relate to automated sales systems. The SAMS Reference is directed to, for example, an expert system that provides account management and sales support such as recommending sales strategies and generating letters.  In the same field of endeavor, the '868 Patent, like the SAMS Reference, discloses an "automated sales promotion selection system" that "identif[ies] promising sales promotions based on recent customer purchases," and "includes a customer information device that receives customer data relating to customer purchases of items from an inventory of items."  '868 Patent at abstract.

Although Defendants contend that the SAMS Reference anticipates all asserted claims under 35 U.S.C. § 102, to the extent the SAMS Reference is found not to disclose all limitations of the asserted claims, it would have been obvious to one of ordinary skill to combine the SAMS Reference and the '868 Patent because they teach the use of known elements and methods.  For example, if the SAMS Reference is found not to disclose automatically initiating an operation using a subsystem, modifying the system of the SAMS Reference to do the same as disclosed in

21

the '868 Patent at 2:54–59, 4:43–48, 10:37–41, 17:64–67, 18:21–29, col. 19, 20:61–21:2, would yield predictable results.

**13. *The Steinberg Reference combined with the '868 Patent and in further view of the Spezialetti Reference***

One of ordinary skill in the art would have had a reason to combine the Steinberg Reference with the '868 Patent, at least because these references both relate to automated sales systems. One of ordinary skill in the art would have further had a reason to combine those references with Spezialetti because all three references relate to integrating computer systems to increase efficiency. The Steinberg Reference is directed to, for example, "the concept of developing an expert system to integrate the sales management function within a useful computer-based decision support system," and "demonstrate[s] how this kind of software will greatly enhance the productivity of the sales function." Steinberg Reference at p.55. In the same field of endeavor, the '868 Patent, like the Steinberg Reference, discloses an "automated sales promotion selection system" that "identif[ies] promising sales promotions based on recent customer purchases," and "includes a customer information device that receives customer data relating to customer purchases of items from an inventory of items." '868 Patent at abstract. The Spezialetti Reference discloses an approach to "reducing delays in event recognition." Spezialetti Reference at 155.

Although Defendants contend that the Steinberg Reference anticipates all asserted claims under 35 U.S.C. § 102, to the extent the Steinberg Reference is found not to disclose all limitations of the asserted claims, it would have been obvious to one of ordinary skill to combine the Steinberg Reference, the '868 Patent, and the Spezialetti Reference because they teach the use of known elements and methods. For example, if the Steinberg Reference is found not to

disclose an event manager, modifying the system of the Steinberg Reference to do the same as disclosed in the '868 Patent at fig. 2 & 10, 2:28–56, cols. 4–5, 9:9–35, 11:36–12:34, 13:17–19, 14:25–26, 18:21–29, col. 19, 20:10–21:2 or in the Spezialetti Reference at 155–157, 162, & 165 would yield predictable results.  As another example, if the Steinberg Reference is found not to disclose an inferred context that includes information related to whether a previous event has occurred, it would have been obvious to one of ordinary skill to combine the Steinberg Reference and the '868 Patent because modifying the system of the Steinberg Reference to do the same as disclosed in the '868 Patent at 5:6–45, 9:22–35, 13:17–19, 14:25–26, 19:13–63, 20:61–21:2 would yield predictable results.  As another example, if the Steinberg Reference is found not to disclose a decision subsystem that identifies rules stored in a memory corresponding to an inferred context and that initiates an operation, it would have been obvious to one of ordinary skill to combine the Steinberg Reference and the '868 Patent because modifying the system of the Steinberg Reference to do the same as disclosed in the '868 Patent at 9:22–35, 10:19–31, 11:60–67 would yield predictable results.  As another example, if the Steinberg Reference is found not to disclose linking an inferred event with an action, it would have been obvious to one of ordinary skill to combine the Steinberg Reference and the '868 Patent because modifying the system of the Steinberg Reference to do the same as disclosed in the '868 Patent at fig. 14, 2:56–59, 8:29–35, col. 13, 14:20–22, 17:33–35, col. 19, 20:61–21:2 would yield predictable results.

14. *The '887 Patent combined with the '868 Patent*

One of ordinary skill in the art would have had a reason to combine the '887 Patent with the '868 Patent, at least because these references both relate to automated sales systems. The '887 Reference is directed to a system facilitating commercial transactions.  '887 Patent at Abstract.  In the same field of endeavor, the '868 Patent, like the '887 Patent, discloses an

23

"automated sales promotion selection system" that "identif[ies] promising sales promotions based on recent customer purchases," and "includes a customer information device that receives customer data relating to customer purchases of items from an inventory of items." '868 Patent at Abstract.

Although Defendants contend that the '887 Patent anticipates all asserted claims under 35 U.S.C. § 102, to the extent the '887 Patent is found not to disclose all limitations of the asserted claims, it would have been obvious to one of ordinary skill to combine the '887 Patent and the '868 Patent because they teach the use of known elements and methods.  For example, if the '887 Patent is found not to disclose automatically initiating an operation using a subsystem, modifying the system of the '887 Patent to do the same as disclosed in the '868 Patent at 2:54–59, 4:43–48, 10:37–41, 17:64–67, 18:21–29, col. 19, 20:61–21:2, would yield predictable results.

### 15.  *The '887 Patent combined with the SAMS Reference*

One of ordinary skill in the art would have had a reason to combine the '887 Patent with the SAMS Reference, at least because these references both relate to automated sales systems. The '887 Reference is directed to a system facilitating commercial transactions.  '887 Patent at Abstract.  In the same field of endeavor, the SAMS Reference, like the '887 Patent, discloses an expert system to provide account management and sales support such as recommending sales strategies and generating letters.

Although Defendants contend that the '887 Patent anticipates all asserted claims under 35 U.S.C. § 102, to the extent the '887 Patent is found not to disclose all limitations of the asserted claims, it would have been obvious to one of ordinary skill to combine the '887 Patent and the SAMS Reference because they teach the use of known elements and methods.  For example, if the

'887 Patent is found not to disclose an event manager, modifying the system of the '887 Patent to do the same as disclosed in the SAMS Reference at pp. 80, 85 would yield predictable results.  As another example, if the '887 Patent is found not to disclose linking an inferred event with an action, it would have been obvious to one of ordinary skill to combine the '887 Patent and the SAMS Reference because modifying the system of the '887 Patent to do the same as disclosed in the SAMS Reference at p. 85 would yield predictable results.

**16.** ***Any of Exhibits 1-2, 4-6, 7, 12, 14, 18-24 combined with the Spezialetti Reference***

One of ordinary skill in the art would have had a reason to combine any of Exhibits A–P with Spezialetti because they relate to integrating computer systems to increase efficiency and automated sales.  The Spezialetti Reference discloses an approach to "reducing delays in event recognition."  Spezialetti Reference at 155.

Although Defendants contend that each of Exhibits A–P by themselves each anticipates all asserted claims under 35 U.S.C. § 102, to the extent any of them are found not to disclose an event manager or the steps performed by the event manager, as claimed in the asserted claims, it would have been obvious to one of ordinary skill to combine any of them and the Spezialetti Reference because they teach the use of known elements and methods.  That is, to the extent any of Exhibits A–P are found not to disclose an event manager, modifying the system of each of the Exhibits A–P to do the same as disclosed in the Spezialetti Reference at 155–157, 162, 165, would yield predictable results.

**17.** ***Exhibits 2, 5, 14, 20, or 21 (Group A) with any one of Exhibits 1, 4, 6, 8, 12, 18, 19, or 22–24 (Group B)***

One of ordinary skill in the art would have had a reason to combine any of the disclosures in Group A (Exhibits 2, 5, 14, 20, or 21) with any of the disclosures in Group B (Exhibits 1, 4, 6,

8, 12, 18, 19, or 22–24) because all these references relate to integrating computer systems to improve efficiency.  One of ordinary skill in the art addressing the problem of how to design a computer-implemented sales system would have researched both computer systems and sales methods.

Although Defendants contend that each of the Group A references anticipates all asserted claims under 35 U.S.C. § 102, to the extent a Group A reference is found not to disclose all limitations of the asserted claims, it would have been obvious to one of ordinary skill to combine that reference with any of the Group B reference because they teach the use of known elements and methods.  For example, if the '044 Patent (Exhibit 2) is found not to disclose an inferred context that "includes information related to at least one phase of the sales process", it would have been obvious to one of ordinary skill in the art to modify the system of the '044 Patent with any of the disclosures of Group B, *see, e.g.*, the '359 Patent (Exhibit 1) at 2:38–44 & 2:48–55; the '028 Patent (Exhibit 4) at 6:37–45; the '031 Patent (Exhibit 6) at Abstract, 7:57-65, & 9:15-46; the'632 Patent (Exhibit 8) at 9:30–47, 73:52–64, 81:11–22, 81:52–62, 91:14–25, & 93:28–43; the '291 Patent (Exhibit 12) at 8:18–24, 12:55–60, 14:37–67, 15:4–8, & 15:65–16:5; the '868 Patent (Exhibit 18) at 5:6–10, 5:40–45, 9:22–35, 13:17–19, 14:25–26, 19:13–43, 19:60–63, & 20:61– 21:2;  the '908 Patent (Exhibit 19) at 27:51–61, 28:48–67, 48:63–49:31, 49:18–22, 28:38– 46, & 53:29–54:35;  the Steinberg Reference (Exhibit 22) at 58–60; the Colombo Reference at 42 & 195; and the SAMS Reference at 77, because such modification would yield predictable results.  The same is true for modifications of the disclosures of Exhibits 5, 14, 20, or 21 with any of the disclosures of Group B, *see, e.g.*, the '359 Patent (Exhibit 1) at 2:38–44 & 2:48–55; the '028 Patent (Exhibit 4) at 6:37–45; the '031 Patent (Exhibit 6) at Abstract, 7:57-65, & 9:15-46; the'632 Patent (Exhibit 8) at 9:30–47, 73:52–64, 81:11–22, 81:52–62,

91:14–25, & 93:28–43; the '291 Patent (Exhibit 12) at 8:18–24, 12:55–60, 14:37–67, 15:4–8, & 15:65–16:5; the '868 Patent (Exhibit 18) at 5:6–10, 5:40–45, 9:22–35, 13:17–19, 14:25–26, 19:13–43, 19:60–63, & 20:61– 21:2; the '908 Patent (Exhibit 19) at 27:51–61, 28:48–67, 48:63–49:31, 49:18–22, 28:38– 46, & 53:29–54:35; the Steinberg Reference (Exhibit 22) at 58– 60; the Colombo Reference at 42 & 195; and the SAMS Reference at 77, because such modification would yield predictable results.

### 18.  *The '359 Patent combined with the '887 Patent*

One of ordinary skill in the art would have had a reason to combine the '359 Patent with the '887 Patent, at least because these references both relate to automated sales systems.  The '359 Patent is directed to dispensing information and contractual services, such as insurance.  The '359 Patent at 5:5-10.  In the same field of endeavor, the '887 Patent, like the '359 Patent, is directed to a system facilitating commercial transactions.

Although Defendants contend that the '359 Patent anticipates all asserted claims under 35 U.S.C. § 102, to the extent the '359 Patent is found not to disclose all limitations of the asserted claims, it would have been obvious to one of ordinary skill to combine the '359 Patent and the '887 Patent because they teach the use of known elements and methods.  For example, if the '359 Patent is found not to disclose an event manager, modifying the system of the '359 Patent to do the same as the event manager disclosed in the '887 Patent (*see, e.g.*, the '887 Patent at Figs. 1, 2, 5, 6, 10, 12, 1:14-47, 3:6-18, 4:6-15; *see also* elements 1.b-g in Attachment 15 for the '887 Patent) would yield predictable results.

### 19.  *The '028 Patent combined with the '887 Patent*

One of ordinary skill in the art would have had a reason to combine the '028 Patent with the '887 Patent, at least because these references both relate to automated sales systems.  The '028

27

Patent is directed to an "Automated Order and Payment System." The '028 Patent at 2:35-36. In the same field of endeavor, the '887 Patent, like the '359 Patent, is directed to a system facilitating commercial transactions.

Although Defendants contend that the '028 Patent anticipates all asserted claims under 35 U.S.C. § 102, to the extent the '028 Patent is found not to disclose all limitations of the asserted claims, it would have been obvious to one of ordinary skill to combine the '028 Patent and the '887 Patent because they teach the use of known elements and methods. For example, if the '028 Patent is found not to disclose an event manager, modifying the system of the '028 Patent to do the same as the event manager disclosed in the '887 Patent (*see, e.g.*, the '887 Patent at Figs. 1, 2, 5, 6, 10, 12, 1:14-47, 3:6-18, 4:6-15; *see also* elements 1.b-g in Attachment 15 for the '887 Patent) would yield predictable results.

### 20. *The '887 Patent combined with the McDermott Reference*

One of ordinary skill in the art would have had a reason to combine the '887 Patent with the McDermott Reference, at least because these references both relate to automated sales systems. The '887 Reference is directed to a system facilitating commercial transactions. The '887 Patent at Abstract. In the same field of endeavor, the McDermott Reference, like the '887 Patent, discloses a rule based expert sales system for configuring computer systems.

Although Defendants contend that the '887 Patent anticipates all asserted claims under 35 U.S.C. § 102, to the extent the '887 Patent is found not to disclose all limitations of the asserted claims, it would have been obvious to one of ordinary skill to combine the '887 Patent and the McDermott Reference because they teach the use of known elements and methods. For example, if the '887 Patent is found not to disclose an event manager, modifying the system and plurality of subsystems of the '887 Patent to include the event manager disclosed in the McDermott

28

Reference (*see* elements 1.b-g in Attachment 27 for the McDermott Reference) would yield predictable results.

**21.  *The '887 Patent combined with the '314 Patent***

One of ordinary skill in the art would have had a reason to combine the '887 Patent with the '314 Patent, at least because these references both relate to automated sales systems.  The '887 Reference is directed to a system facilitating commercial transactions.   The '887 Patent at Abstract.   In the same field of endeavor, the '314 Patent, like the '887 Patent, discloses a "network-based sales system," The '314 Patent at Abstract.

Although Defendants contend that the '887 Patent anticipates all asserted claims under 35 U.S.C. § 102, to the extent the '887 Patent is found not to disclose all limitations of the asserted claims, it would have been obvious to one of ordinary skill to combine the '887 Patent and the '314 Patent because they teach the use of known elements and methods.  For example, if the '887 Patent is found not to disclose an event manager, modifying the system and plurality of subsystems of the '887 Patent to include the event manager disclosed in the '314 Patent (*see, e.g.*, Fig.1, 2:19-25, 3:19-43, 5:5-15; *see also* elements 1.b-g in Attachment 16 for the '314 Patent) would yield predictable results.

**22.  *The '887 Patent combined with the '332 Patent***

One of ordinary skill in the art would have had a reason to combine the '887 Patent with the '332 Patent, at least because these references both relate to automated sales systems. The '887 Reference is directed to a system facilitating commercial transactions.   The '887 Patent at Abstract.   In the same field of endeavor, the '332 Patent, like the '887 Patent, discloses a computer-implemented, rules-based expert system for selling, for example, lumber.   The '332 Patent at Abstract, 19:55-20:8.

29

Although Defendants contend that the '887 Patent anticipates all asserted claims under 35 U.S.C. § 102, to the extent the '887 Patent is found not to disclose all limitations of the asserted claims, it would have been obvious to one of ordinary skill to combine the '887 Patent and the '332 Patent because they teach the use of known elements and methods.  For example, if the '887 Patent is found not to disclose an event manager, modifying the system and plurality of subsystems of the '887 Patent to include the event manager disclosed in the '332 Patent (*see, e.g.*, the '332 Patent at Figs. 1, 4, 8, 14, 1:61-2:51, 5:32-6:15; *see also* elements 1.b-g in Attachment 7 for the '332 Patent) would yield predictable results.

III.     **P.R. 3-3(c): Prior Art Charts**

Pursuant to P.R. 3-3(c), Defendants attach claim charts each showing how a reference or combination of references identified above teaches the limitations of the asserted claims of the '525 Patent.   Defendants' claim charts are subject to revision and amendment pursuant to Federal Rule of Civil Procedure 26(e) and P.R. 3-6 following discovery or the Court's construction of the claims at issue.   To the extent that the following contentions reflect constructions of claim limitations consistent with or implicit in Plaintiff's infringement contentions, no inference is intended nor should any be drawn that Defendants agree with Plaintiff's claim constructions.   Defendants expressly reserve the right to contest such claim constructions.   Defendants offer such contentions solely in the alternative to any position they may ultimately take as to claim construction and non- infringement issues.

| Attachment | Prior Art or Prior Art Combination |
|---|---|
| 1 | U.S. Pat. No. 4,567,359 |
| 2 | U.S. Pat. No. 4,648,044 |
| 3 | U.S. Pat. No. 4,887,208 |
| 4 | U.S. Pat. No. 4,947,028 |
| 5 | U.S. Pat. No. 5,103,498 |
| 6 | U.S. Pat. No. 5,195,031 |

| 7 | U.S. Pat. No. 5,303,332 |
|---|---|
| 8 | U.S. Pat. No. 5,347,632 |
| 9 | U.S. Pat. No. 5,388,165 |
| 10 | U.S. Pat. No. 5,463,555 |
| 11 | U.S. Pat. No. 5,523,942 |
| 12 | U.S. Pat. No. 5,570,291 |
| 13 | U.S. Pat. No. 5,576,951 |
| 14 | U.S. Pat. No. 5,660,176 |
| 15 | U.S. Pat. No. 5,710,887 |
| 16 | U.S. Pat. No. 5,715,314 |
| 17 | U.S. Pat. No. 5,734,837 |
| 18 | U.S. Pat. No. 5,774,868 |
| 19 | U.S. Pat. No. 5,999,908 |
| 20 | U.S. Pat. No. 6,005,531 |
| 21 | the O'Leary Reference |
| 22 | the Steinberg Reference |
| 23 | the Colombo Reference |
| 24 | the SAMS Reference |
| 25 | the Genie Reference |
| 26 | the Negrino Reference |
| 27 | the McDermott Reference |
| 28 | the Barker Reference |
| 29 | the Truck Force Reference |
| 30 | U.S. Pat. No. 6,061,506 |
| 31 | The '359 Patent combined with the '868 Patent or the SAMS Reference |
| 32 | The '028 Patent combined with the '868 Patent or the SAMS Reference |
| 33 | The '031 Patent combined with the '868 Patent or the SAMS Reference |
| 34 | The '632 Patent combined with the '868 Patent |
| 35 | The '291 Reference combined with the '868 Patent or the SAMS Reference |
| 36 | The Steinberg Reference combined with the '868 Patent, the SAMS Reference, and/or the Spezialetti Reference |
| 37 | The SAMS Reference combined with the '868 Patent |
| 38 | The '887 Patent combined with the '868 Patent or the SAMS Reference |

Defendants contend the following limitation of the asserted claims of the '525 Patent is governed by 35 U.S.C. § 112 ¶ 6: "event manager," "decision subsystem," and "a plurality of

31

subsystems configured to facilitate one or more actions performed during at least one phase of the sales process." The identities of the structure(s), act(s), or material(s) in each item of prior art that performs the claimed function is identified in the Attachments.

In addition, Defendants further incorporate by reference any claims charts served with the invalidity contentions in prior lawsuits concerning the '525 Patent, including but not limited to any claim charts served with the invalidity contentions in the lawsuits *SFA Systems, L.L.C. f/k/a Triton IP, L.L.C. v. Infor Global Solutions (Michigan), Inc.*, et al., C.A. No. 6:07-cv-067, Eastern District of Texas and *SFA Systems, LLC v. 1-800-Flowers.com, Inc.*, C.A. No. 6:09-cv-340-LED, Eastern District of Texas.

In addition, invalidity charts corresponding to prior art references identified in the *Infor* litigation are attached as Addendum 1. Defendants have also attached Appendix 1, which are supplemental invalidity charts to the *Infor* charts served in the *1-800-Flowers* litigation for the claims not asserted in the *Infor* case.

## III.    P.R. 3-3(d): Indefiniteness

Pursuant to Patent Rule 3-3(d), Defendants contend that each asserted claim of the '525 Patent is invalid under 35 U.S.C. § 112 as indefinite for inclusion of one or more of the following claim terms:

- "decision subsystem";

- "changes in state characteristic of an event";

- "inferring occurrence of the event and a context in which the event occurred" / "infer occurrence of the event and a context in which the event occurred"; and

- "automatically initiating an operation in one or more particular subsystems of the computer"/"automatically detecting one or more changes in state characteristic of

an event occurring in the sales process"/"automatically initiate an operation using one or more of the plurality of subsystems."

- "on or more particular subsystems of the computer"

### A.    "decision subsystem"

The claim term "decision subsystem" is indefinite because the '525 Patent fails to provide an objective standard for determining its scope and therefore is insolubly ambiguous. There is nothing in the specification that provides insight as to whether a subsystem is a "decision subsystem" or not. In fact, "decision subsystem" only appears in the claims—there is no reference to a "decision subsystem" in the specification.

### B.    "changes in state characteristic of an event"

The claim phrase "changes in state characteristic of an event" is indefinite because the specification fails to provide an objective standard for evaluating whether a change in state is *characteristic* of an event. The phrase "changes in state characteristic of an event" did not appear in the original claims and was not used in the specification.

### C.    "inferring occurrence of the event and a context in which the event occurred"/"infer occurrence of the event and a context in which the event occurred"

The claim elements "inferring occurrence of the event and a context in which the event occurred" and "infer occurrence of the event and a context in which the event occurred" are indefinite because it is impossible to determine the construction of each of the three parts of the element ("inferring", "inferring occurrence of the event", and "inferring . . . a context in which the event occurred"). One of ordinary skill in the art could not determine the meaning of these terms from the claims and specification. This "inferring" clause was not part of the originally filed patent application, and is not disclosed, supported, or described in the specification.

33

### D.     "automatically"

The claim elements "automatically initiating an operation in one or more particular subsystems of the computer," "automatically detecting one or more changes in state characteristic of an event occurring in the sales process" and "automatically initiate an operation using one or more of the plurality of subsystems" are indefinite because it is impossible to determine the construction of the term "automatically."  One of ordinary skill in the art could not determine the meaning of this term from the claims and specification because the level of user intervention prior to the computer "automatically" initiating an operation or detecting a change in state is unclear.

### E.     "one or more particular subsystems of the computer"

The claim elements "one or more particular subsystems of the computer" is indefinite because it is impossible to determine what "particular subsystems" is referred to and "the computer" has no antecedent basis.  There is no objective standard for determining this claim elements scope and therefore it is insolubly ambiguous.

## IV.     P.R. 3-3(d): Lack of Enablement, and Lack of Written Description

Pursuant to Patent Rule 3-3(d), Defendants contend that each asserted claim of the '525 Patent is invalid under 35 U.S.C. § 112 ¶ 1 because the specification does not enable and/or does not have an adequate written description of the claim limitations: "inferring occurrence of the event and a context in which the event occurred" (claims 1 & 20, and by dependency, claims 2–4, 24, & 25) and "infer occurrence of the event and a context in which the event occurred" (claim 40) (collectively, the "inferring limitations").  As noted above, all of the asserted claims either contain one of the inferring limitations or depend from an independent claim that contains one of the inferring limitations.

34

The written description requirement of 35 U.S.C. § 112 was not met as to the inferring limitations because the claims contain subject matter which was not described in the specification in such a way as to reasonably convey to one skilled in the art that the inventors, at the time the application was filed, had possession of the claimed invention. Further, the enablement requirement of 35 U.S.C. § 112 was not met as to the inferring limitations because the subject matter of those limitations was not described in such a way as to enable one skilled in the art to which it pertains to make and/or use the invention. A person of ordinary skill in the art would be unable to make and/or use the claimed apparatus because there is no explanation of its design, structure, or functionality beyond the claim language, which was new matter added during prosecution. The claim language itself identifies new, vague, and unsupported elements and functionalities for which the specification fails to provide enabling support.

The terms infer or inferring do not exist in the specification. The specification and original claims do not describe any embodiment where the occurrence of an event and a context in which the event occurred is inferred. All limitations must appear in the specification. This failure to expressly describe the inferring of an occurrence of the event and a context in which the event occurred results in a specification that fails to convey to one of ordinary skill that the inventors were in possession of the invention at the time of filing. Moreover, the specification fails to enable one skilled in the art to make and/or use the invention because it provides no teachings related to the inferring of an occurrence of an event and a context in which the event occurred. A person of ordinary skill would be unable to make and/or use the claimed apparatus because there is no explanation of its design, structure, or functionality beyond the claim language.

**V.      Document Production**

35

Pursuant to P.R. 3-4(a) and to the extent relevant and discoverable, each Defendant is producing and/or making available for inspection and copying source code and/or related documents to show the operation of any aspects or elements of each accused instrumentality to the extent identified by Plaintiff in its P.R. 3-1(c) chart.

Pursuant to P.R. 3-4(b), Defendants are producing concurrently herewith each item identified pursuant to P.R. 3-3(a) that does not appear in the file history of the patent at issue, with the exception of certain materials related to the following prior art references, which were incorporated by reference:

1.      The Omaha Steaks System.

2.      Northern Tool's MOMS System.

Items related to these prior art references were previously served on SFA in the lawsuit *SFA Systems, LLC v. 1-800-Flowers.com, Inc.*, C.A. No. 6:09-cv-340-LED, Eastern District of Texas and are incorporated by reference.

In addition, as noted above, prior art references related to the CASS System will also not be produced herewith.  These references will be produced upon agreement and clearance from Clear With Computers, LLC in accordance with the protective order entered in *Clear With Computers, LLC v. Hyundai Motor America, Inc.*, Civ. Case No. 6:08-CV-479, Eastern District of Texas.

January 14, 2010                                    Respectfully, submitted,

**/s/ Neil J. McNabnay**                           **/s/ Gene C. Schaerr**

Neil J. McNabnay                                   Douglas Ray McSwane, Jr.
Texas Bar No. 24002583                             State Bar No. 13861300
njm@fr.com                                         dougmcswane@potterminton.com
Britnee M. Reamy                                   P.O. Box 359
Texas Bar No. 24053439                             Tyler, Texas 75710
bmr@fr.com                                         Telephone: (903) 597-8311
1717 Main Street Suite 5000                        Fax: (903) 593-0846
Dallas Texas 75201
(214) 747-5070 - Telephone                         Peter C McCabe, III
(214) 747-2091 – Facsimile                         IL Bar No. 6190379
                                                   pmccabe@winston.com
Ajit S. Dang                                       WINSTON & STRAWN LLP
Georgia Bar No. 352611                             35 W Wacker Dr
Fish & Richardson P.C.                             Chicago, IL 60601
1180 Peachtree St NE, Fl. 21                       Telephone: 312.558.5600
Atlanta Georgia 30309                              Facsimile: 312.558.5700
(404) 892-5005 – Telephone
                                                   Gene C. Schaerr
*Attorneys for Defendants*                         DC Bar 416368
*BIGMACHINES, INC., CARESTREAM*                    gschaerr@winston.com
*HEALTH, INC., ENTERASYS*                          John W. Moss
*NETWORKS, INC.* and *RICOH*                       DC Bar 987113
*AMERICAS CORPORATION*                             jwmoss@winston.com
                                                   Geoffrey P. Eaton
                                                   NY Bar 3000841
                                                   geaton@winston.com
                                                   WINSTON & STRAWN, LLP
                                                   1700 K Street NW
                                                   Washington, DC 20006
                                                   Telephone: 202.282.5000
                                                   Facsimile: 202.282.5100

                                                   *Attorneys for Defendant*
                                                   *HYUNDAI MOTOR AMERICA, INC.*

## **<u>CERTIFICATE OF SERVICE</u>**

The undersigned hereby certifies that a true and correct copy of the above and foregoing document has been served on January 14, 2011, to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(a)(3).

<u>/s/ *Neil J. McNabnay*         </u>
Neil J. McNabnay